673 So.2d 618 (1996)
Mark REBSTOCK and Lela Champagne Rebstock
v.
Pete J. CHERAMIE, Allstate Insurance Company and Farm Bureau Insurance Company.
No. 95 CA 1388.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
Johnny X. Allemand, Thibodaux, Nick F. Noriea, Jr., New Orleans, for Plaintiffs-Appellants Mark and Lela Rebstock.
Denis J. Gaubert, III, Thibodaux, for Defendant-Appellee Farm Bureau Insurance Company.
Randall L. Bethancourt, Houma, for Defendants-Appellees Pete J. Cheramie and Allstate Insurance Company.
*619 Before CARTER and PITCHER, JJ., and CRAIN, J. Pro Tem.[1]
PITCHER, Judge.
Plaintiff seeks to recover damages for injuries sustained as a result of an automobile accident. The trial court held that plaintiff failed to prove that his injuries were not the result of intervening causes and limited his damages to a time period of November 5, 1992 to April 18, 1993. We affirm.

FACTS
On November 5, 1992, Mark Rebstock (Mr. Rebstock) was driving his truck on Louisiana Highway 1 when he was rear-ended by a vehicle driven by Pete Cheramie.[2] On April 18, 1993, Mr. Rebstock, and his wife, Lela Rebstock (Mrs. Rebstock), were involved in a single-car accident.[3] On January 22, 1994, Mr. Rebstock had a third accident, in which a company truck driven by Mr. Rebstock rear-ended an 18-wheel truck.

First Accident
Mr. Rebstock testified that on November 5, 1992, he was operating his 1990 Nissan truck in a southerly direction on Louisiana Highway 1, and as he approached the South Lafourche bridge, the light at the intersection was yellow. Mr. Rebstock stated that he stopped his vehicle for the red light. Mr. Rebstock further stated that while stopped at the red light, he noticed the headlights of a vehicle behind him. Before Mr. Rebstock could do anything, his vehicle was hit in the rear by a vehicle driven by Pete Cheramie.
Mr. Rebstock stated that upon impact, his vehicle was knocked across the intersection, and he was whipped back and forward in the seat of his vehicle, which resulted in his driver's seat breaking at the hinge. Mr. Rebstock stated that his head hit the rear window behind the driver's seat, and the window was knocked out. As a result of this accident, Mr. Rebstock sustained an abrasion to his lower back and was diagnosed with a cervical and lumbar strain.

Second Accident
On April 18, 1993, Mr. and Mrs. Rebstock were traveling about 40 miles per hour in their 1990 Nissan truck on Highway 76 in Missouri. While Mr. Rebstock was driving, the rear axle broke off, and the back tire on the passenger's side came completely off. Mr. Rebstock stated that the back of the truck went off the road causing the front end of the truck to go off the road. The highway did not have a shoulder, so Mr. Rebstock's truck went immediately off the highway and down a little cliff. Mr. Rebstock stated that the truck rode over some little bushes and clipped some little branches. Mr. Rebstock also stated that he was not hurt in the accident nor did he suffer any new injuries to his back and neck. As a result of the accident, Mrs. Rebstock suffered a big bruise on her elbow.

Third Accident
Mr. Rebstock stated that on January 22, 1994, he was driving an 18-wheel truck with an attached trailer containing 76,000 to 80,000 pounds of sand. Mr. Rebstock stated that the brakes in his truck were worn out, and when he tried to stop, he could not stop the truck. Mr. Rebstock stated that the only way he was able to stop the truck was to down-shift the truck to a speed of 20 to 25 miles per hour and collide with the proceeding 18-wheel truck. As a result of the accident, Mr. Rebstock sustained a large hematoma under the skin in the pelvic region of his left groin; lacerations on the neck, chin and lip; and a broken tooth.

PROCEDURAL HISTORY
On May 21, 1993, Mr. and Mrs. Rebstock filed a petition for damages against defendants, *620 Mr. Cheramie and his insurer, Allstate Insurance Company (Allstate). Mr. Rebstock also named as a defendant his uninsured motorist carrier, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau).[4] On June 23, 1993, Farm Bureau filed an answer along with a cross-claim naming Mr. Cheramie and Allstate as defendants in the cross-claim. Allstate and Mr. Cheramie filed an answer and a request for a jury trial on August 30, 1993.
A bench trial was held on March 15 and 16, 1995.[5] After trial, the trial court rendered a judgment in favor of Mr. Rebstock, finding Mr. Cheramie at fault in causing the November 5, 1992 accident. The trial court awarded $6,000.00 for past, present and future mental and physical pain and suffering; $9,600.00 for past lost wages; and $2,490.66 for past medical expenses. The trial court also awarded $1,000.00 to Mrs. Rebstock for loss of consortium. The trial court further rendered judgment in favor of Farm Bureau and against Allstate and Mr. Cheramie for payment of Farm Bureau's medical lien in the sum of $2,318.66. This reduced Mr. Rebstock's award for past medical expenses to $172.00.
In oral reasons, the trial court stated that "the plaintiff [Mr. Rebstock] had the burden of proving that his injuries were not the result of a separate, independent and intervening cause. Thomas v. Hartford Ins. Co., 540 So.2d 1068 (La.App. 1st Cir.1989) [, writ denied, 542 So.2d 516 (La.1989)]." The trial court further stated that the Rebstocks failed to prove by a preponderance of the evidence that Mr. Rebstock's medical complaints which occurred after April 18, 1993, were caused by the November 5, 1992 accident. The trial court found that the April 18, 1993, accident was an intervening cause of injury to Mr. Rebstock. Thus, the trial court limited Mr. Rebstock's damages to the period of November 5, 1992, through April 18, 1993. Mr. and Mrs. Rebstock now appeal and allege the following assignments of error:
1. Whether the trial court erred in placing the burden of proof upon the plaintiff (Mr. Rebstock) regarding the issue of whether a subsequent incident caused and/or contributed to plaintiff's (Mr. Rebstock) injuries.
2. Assuming, arguendo that the plaintiff (Mr. Rebstock) does bear the burden of proving that a subsequent incident did not cause his injuries, did plaintiff (Mr. Rebstock) sustain his burden of proof by producing uncontradicted medical testimony, lay testimony, and/or plaintiff's (Mr. Rebstock) own testimony.
3. Whether the trial court erred in terminating plaintiff's (Mr. Rebstock) damages on the date of the subsequent incident and rendering a damage award that reflects no compensation after April 18, 1993.

INSEPARABILITY OF INJURIES
In assignments of error numbers one and two, Mr. Rebstock contends that his injuries sustained in the November 5, 1992, April 18, 1993, and the January 22, 1994, accidents were inseparable, and therefore, he should be entitled to recover from Mr. Cheramie, Allstate, and Farm Bureau for his entire loss. Mr. Rebstock further contends that he should not bear the impossible burden of proving which injuries are attributable to which accident. We disagree.
The law clearly provides that when two separate accidents concur to produce injuries which cannot be separated, the burden is on each defendant to prove his own innocence or his own limited liability for the accident sued upon. Probst v. Wroten, 433 So.2d 734, 743 (La.App. 5th Cir.1982), (on rehearing). In such case, it is virtually impossible to properly evaluate the damages sustained because the accidents occur so close in time. However, where the accidents *621 do not occur close in time, as in this case, an assessment of the damages from the first accident can be made prior to the second accident and are separable from any damages alleged to have been caused by the second accident. Hess v. Sports Publishing Company, 520 So.2d 472, 474 (La.App. 4th Cir.), writ denied, 523 So.2d 1343 (La.1988). It is the plaintiff's burden to establish which damages were attributable to which accident. Jarreau v. Hirschey, 93-1402 p. 8 (La.App. 1st Cir. 12/7/94); 650 So.2d 1189, 1194, writ denied, 95-0766 (La. 5/12/95); 654 So.2d 348.
A tortfeasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes of damage. Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1075 (La.App. 1st Cir.), writ denied, 542 So.2d 516 (La.1989). The plaintiff has the burden of proving that his injuries were not the result of separate, independent, and intervening causes. Thomas v. Hartford Insurance Company, 540 So.2d at 1075.
After the first accident, Mr. Rebstock sought medical attention at Our Lady of the Sea Hospital. Mr. Rebstock complained of pain in his lower back and pelvic area. At the hospital, Mr. Rebstock was treated for an abrasion to his lower back.
Subsequently, Mr. Rebstock began treatment with his family physician, Dr. Walter Birdsall. In 1992, Mr. Rebstock was seen by Dr. Birdsall on November 9, November 20, and December 4. On each occasion, Mr. Rebstock complained of pain in his back and neck. He also complained of headaches and nausea. Dr. Birdsall's diagnosis was cervical and lumbar strain. Dr. Birdsall treated Mr. Rebstock with medication and physical therapy. Dr. Birdsall also recommended that Mr. Rebstock avoid bending, lifting and driving. On Mr. Rebstock's December 4 visit, Dr. Birdsall ordered a CT-scan. The results of this CT-scan were normal.
During the time Dr. Birdsall was treating Mr. Rebstock, Dr. William Kinnard, an orthopedic surgeon, also treated Mr. Rebstock. Dr. Kinnard saw Mr. Rebstock on two occasions, November 12, 1992 and December 17, 1992. Mr. Rebstock complained of pain in his lower back and neck. He also complained of nausea, headaches and had difficulty sleeping. On these visits, Dr. Kinnard performed neurological examinations, which resulted in normal findings. Dr. Kinnard diagnosed Mr. Rebstock with mild spasm in his neck along with cervical and lumbar strain. Dr. Kinnard stated that the headaches and nausea could have been associated with a concussion.
Dr. Kinnard treated Mr. Rebstock with medication and physical therapy. Dr. Kinnard felt that on the December 17, 1992 visit, Mr. Rebstock's complaints of pain were excessive. Dr. Kinnard opined that during Mr. Rebstock's treatment, Mr. Rebstock was unable to work in his normal capacity, and he was temporarily restricted in his work duties until at least his last visit on December 17, 1992. Dr. Kinnard also opined that Mr. Rebstock's complaints were consistent with his history of the November 5, 1992 accident. Dr. Kinnard did not see Mr. Rebstock again after the December 17, 1992 visit and did not refer him to another doctor.
On January 22, 1993, Mr. Rebstock had an office visit with Dr. Birdsall. At this visit, Mr. Rebstock requested that he be allowed to return to work because Dr. Kinnard told him (Mr. Rebstock) that his symptoms would improve. At this time, Mr. Rebstock told Dr. Birdsall that he had some discomfort in his lower back, and his neck had improved, but he still had some pain in his neck. Even though he still had "some problems", Mr. Rebstock felt that he could perform his work duties. Although Dr. Birdsall felt that Mr. Rebstock still had cervical and lumbar strain, he thought it was reasonable to allow Mr. Rebstock to resume his work-related activities.
Dr. Birdsall next saw Mr. Rebstock for an office visit on March 18, 1993. On this visit, Mr. Rebstock informed Dr. Birdsall that he had moved to Missouri, so he was unable to keep his regularly scheduled office visit. Mr. Rebstock stated that he had been working in a family-owned restaurant in Missouri. Mr. Rebstock had complaints of lower back pain, neck pain and weakness in his right arm. At this time, Dr. Birdsall's diagnosis was a cervical *622 and lumbar strain, and he referred Mr. Rebstock to Dr. Henry C. McKowen, a neurosurgeon.
Although he was living in Missouri, Mr. Rebstock began seeking treatment with Dr. McKowen in Thibodaux, La., on April 8, 1993. At the initial office visit, Mr. Rebstock complained of lower back and neck pain. Dr. McKowen performed a clinical examination which resulted in findings of tightness in the lumbar area and tenderness in the neck muscles. Dr. McKowen performed a neurological examination, which resulted in normal findings.
After Mr. Rebstock's initial visit, Dr. McKowen reviewed x-rays from Our Lady of the Sea Hospital. Dr. McKowen opined that these x-rays of the thoracic spine, lumbar spine, and the cervical spine were normal. Dr. McKowen also reviewed a previously taken CT-scan of Mr. Rebstock's brain and concluded that the CT-scan was normal. At this time, Dr. McKowen diagnosed Mr. Rebstock with a cervical and lumbar strain. Dr. McKowen opined that Mr. Rebstock had some permanent injuries because six months had already elapsed from the date of the accident. Dr. McKowen further opined that the injuries to Mr. Rebstock's neck and back were related to the November 5, 1992 accident. Dr. McKowen stated that Mr. Rebstock could perform medium duty work. Dr. McKowen concluded that Mr. Rebstock would not require hospitalization or surgery.
Subsequently, Mr. Rebstock was involved in his second accident, on April 18, 1993. The deposition of Corporal Mark D. Harwell, an employee of the Missouri Highway Patrol, was introduced into evidence. Corporal Harwell testified that he investigated a single-car accident involving Mr. and Mrs. Rebstock on April 18, 1993. Although the accident happened in the early morning hours, Corporal Harwell did not go immediately to the accident scene because no one from his office was notified about the accident until later that day. At approximately 11:30 a.m., Corporal Harwell met Mr. Rebstock at the accident scene. Mr. Rebstock's vehicle was in the place where it came to a stop after the accident.
Corporal Harwell stated that the right side and the undercarriage of Mr. Rebstock's vehicle were damaged. Mr. Rebstock's vehicle ran about thirteen feet off the highway. Corporal Harwell stated that the vehicle struck several trees, side-swiped a couple of large trees, and ran over several small saplings. At the point where Mr. Rebstock's vehicle went off the highway, there was a drop of four to six feet. Corporal Harwell stated that the vehicle traveled approximately 104 feet after the axle broke. Corporal Harwell's accident report reflected that Mr. and Mrs. Rebstock indicated that they were not injured in the accident and were wearing their seat belts.
During his deposition, Corporal Harwell was shown Farm Bureau Exhibit 8, which consisted of fifteen photographs from the accident scene. Corporal Harwell identified photograph six as a large tree with scrapings that he believed resulted from Mr. Rebstock's vehicle. Corporal Harwell recognized the tree in the photograph as the one that Mr. Rebstock indicated his vehicle hit. Corporal Harwell stated that Mr. Rebstock's vehicle was towed from the accident scene. Corporal Harwell stated that there was no indication that Mr. Rebstock applied his brakes during the accident. Corporal Harwell was unable to determine whether the right rear wheel axle broke off prior to Mr. Rebstock's vehicle leaving the highway.
The day after the second accident, Mr. Rebstock went with Mrs. Rebstock to see a doctor in Missouri, but only Mrs. Rebstock had an appointment scheduled with the doctor. Mrs. Rebstock told the doctor that she and her husband were involved in an automobile accident. Thereafter, the doctor examined Mr. Rebstock. Mr. Rebstock told the doctor about his previous accident "on November 4," and told him about having previously received a cortisone injection once before. Mr. Rebstock asked to have another cortisone injection because it had been about six months since he had a cortisone injection. The doctor gave Mr. Rebstock a cortisone injection.
Following the second accident and the examination by the Missouri doctor, Mr. Rebstock was not seen by a doctor again until *623 October 15, 1993, when he had an office visit with Dr. McKowen. On this visit, Mr. Rebstock did not inform Dr. McKowen of his second accident. Mr. Rebstock complained of lower back pain radiating into his right leg. Dr. McKowen indicated that Mr. Rebstock stated that the pain increased when sitting long lengths of time. Mr. Rebstock did not complain of any neck pain. The results of Dr. McKowen's neurological examination of Mr. Rebstock were normal. However, Dr. McKowen found objective findings of muscle spasm in the lumbar region. Dr. McKowen diagnosed Mr. Rebstock with a lumbar strain and ordered an MRI of the lumbar spine. Dr. McKowen opined that Mr. Rebstock's medical condition was similar to his medical condition on his April 8, 1993 visit, but Mr. Rebstock was suffering with a flare up of muscle spasm in his lumbar region.
On January 22, 1994, Mr. Rebstock was involved in a third accident. Mr. Rebstock stated following his third accident, he saw Dr. Birdsall on January 28, 1994, for a hip injury that resulted from this accident. At this visit, Mr. Rebstock did not inform Dr. Birdsall of his second accident, but Mr. Rebstock did give Dr. Birdsall a history of the third accident. In his history, Mr. Rebstock stated that he was traveling at 30 to 40 miles per hour and rear-ended an 18-wheel truck, and his head hit the front windshield of the truck. Mr. Rebstock complained of neck and lower back stiffness and pain in his left leg. As a result of the accident, Mr. Rebstock sustained a large hematoma under the skin in the pelvic region of his left groin; lacerations on the neck, chin and lip; and a broken tooth. Dr. Birdsall diagnosed Mr. Rebstock with a concussion and a cervical strain. Dr. Birdsall recommended that Mr. Rebstock see a dentist and return to see him in two weeks. Mr. Rebstock never returned to see Dr. Birdsall for a follow-up visit. Dr. Birdsall opined that this January 24, 1994 accident was sufficient to cause new injuries or aggravate Mr. Rebstock's previous injuries.
On February 28, 1994, Mr. Rebstock returned to see Dr. McKowen for an office visit. On this visit, Mr. Rebstock complained of lower back trouble. Mr. Rebstock's clinical examination resulted in findings of tightness and tenderness in his lumbar region. At this visit, Dr. McKowen told Mr. Rebstock that the results of his MRI of the lumbar spine revealed a little protrusion at the L4-5 disc level. However, Dr. McKowen stated that there was no evidence of a big disc herniation, nor nerve-root compression, and nothing that required surgery. Dr. McKowen opined that the small protrusion was a common finding. Dr. McKowen treated Mr. Rebstock with medication.
On February 6, 1995, Mr. Rebstock had another office visit with Dr. McKowen. Mr. Rebstock complained of lower back pain and some neck pain. Mr. Rebstock stated that when he looked downward, he felt tightness in his neck and sometimes felt nauseated when he stayed in the downward position for a length of time. Dr. McKowen diagnosed Mr. Rebstock with cervical and lumbar strain. According to Dr. McKowen, Mr. Rebstock's prognosis was permanent soft tissue injury to his neck and lower back. Dr. McKowen opined that Mr. Rebstock would have flare ups from time to time and would continue to need medication. Dr. McKowen also opined that Mr. Rebstock was in the same medical condition as he was in on his April 8, 1993 visit, and Mr. Rebstock could perform medium duty work.
The record reflects that regarding the second and third accident, Dr. McKowen and Dr. Birdsall testified as follows: In his deposition, Dr. McKowen testified that it is very important for a doctor to be informed of prior accidents and injuries. On his subsequent visits with Dr. McKowen, Mr. Rebstock did not inform him of his second accident. Dr. McKowen stated that the second accident "could flare up the injuries [Mr. Rebstock] already had, aggravate [Mr. Rebstock] or cause new injuries." Dr. McKowen did not have any knowledge of the second accident and could not determine what effect the second accident had on Mr. Rebstock's April 8, 1993 medical condition. Dr. McKowen opined that if Mr. Rebstock's injury from the second accident was significant, then it could have contributed to Mr. Rebstock's lower back and neck problems.
*624 At trial, Dr. Birdsall stated that on Mr. Rebstock's January 28, 1994 visit, Mr. Rebstock did not inform him of the second accident. Dr. Birdsall further stated that he was unable to provide an opinion as to the effect of the second accident because he was not aware of any of the particulars of the accident. Because he did not have information needed from Mr. Rebstock and information from an examination of Mr. Rebstock, it was impossible for Dr. Birdsall to determine whether the third accident more likely than not caused Mr. Rebstock's complaints in the cervical spine to date. The record does not reflect exactly what information Dr. Birdsall needed to make his determination.
Based upon this evidence, the trial court concluded that Mr. Rebstock failed to prove by a preponderance of the evidence that his medical complaints after April 18, 1993 were caused by the November 5, 1992 accident. The trial court found that there was no medical evidence put forth as to the effect of the second accident upon Mr. Rebstock. The trial court also found Mr. Rebstock to be an incredible witness. After a thorough review of the record, we conclude that the record supports the findings of the trial court. Therefore, these assignments of error are without merit.

DAMAGES
Through assignment of error number three, Mr. Rebstock contends that the trial court erred in terminating his damages on the date of the second accident (April 18, 1993) and assessing damages that reflect no compensation after April 18, 1993.
Because of our resolution of the issues presented in assignments of error number one and two, we find a discussion of assignment of error number three unnecessary.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mark Rebstock.
AFFIRMED.
NOTES
[1] Judge Hillary Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The record reflects that Mr. Rebstock was also involved in an automobile accident on November 4, 1992. The trial court held that Mr. Rebstock's injuries were more probable than not a result of his November 5, 1992 accident rather than the November 4, 1992 accident. We note that, in this appeal, Mr. Rebstock does not complain about the trial court's findings as to the November 4, 1992 accident. For purposes of this opinion, we will refer to the November 5, 1992 accident as Mr. Rebstock's first accident.
[3] The record reflects that in March of 1994, Mark Rebstock and Lela Champagne Rebstock divorced.
[4] We note that in the original petition, Louisiana Farm Bureau Casualty Insurance Company was incorrectly referred to as "Farm Bureau Insurance Company" in the Rebstocks' petition for damages.
[5] On the morning of the trial, the trial court dismissed two of the jurors. One juror was dismissed for family reasons, and the other juror had obtained information about defendant's policy limits and economic status. The parties were unable to agree on whether to proceed with eleven jurors, so the trial court declared a mistrial. By consent of all parties, the jury trial was converted to a bench trial.