770 So.2d 824 (2000)
Willie HILL, Jr.
v.
William J. ABRAHAM, Jr. and Allstate Insurance Company.
No. 00-CA-327.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2000.
*825 Gerald P. Webre, Webre Law Firm, Metairie, Louisiana, Counsel for plaintiff-appellee.
Christopher E. Lozes, New Orleans, Louisiana, Counsel for defendants-appellants.
Court composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and H. CHARLES GAUDIN, Pro Tempore.
McMANUS, Judge.
In this matter we are asked to review an award of damages entered against Appellant, who caused one of two accidents contributing to Appellee's back injury. Finding no error in the trial judge's assessment of what degree of harm was caused by Appellant, we affirm.

FACTS AND PROCEDURAL HISTORY
This matter originated with a suit for damages filed by Appellee, Willie Hill, Jr., against William J. Abraham, Jr., and his auto liability insurer, Appellant Allstate Insurance Company. The suit arises out of an automobile accident which occurred on May 8th, 1995; liability is not an issue here. The matter was tried before a judge only on September 13th, 1999, and the following testimony was produced at trial.
Hill testified that the accident had occurred as he was driving on the interstate approaching Causeway Boulevard from Kenner. Hill's was the second car struck from behind in a three car collision caused by Defendant insured Abraham. Hill testified that though he had been able to stand and walk immediately after the accident, he had been unable to go to work. He testified that within a day after the accident he had begun to suffer severe pain in his lower back and some pain in his neck. Hill had been unable to return to work for three or four days, and had begun to treat with Dr. Richard Hages, a chiropractor, within a day after the accident.
Though Hill's back complaints continued over the next month, he testified that he had not suffered with any discomfort in his legs between the automobile accident and an on the job accident which occurred on June 12th, 1995.
At the time of Hill's second accident, he was working for Diversified Foods, and had been required as part of his duties to lift sacks and barrels containing various cooking ingredients and which could weigh as much as a hundred pounds each. Hill's work accident occurred as he had been lifting a barrel of meat marinade: Hill testified that he had fallen to the floor after his back had "gone out." He had been unable to stand after the accident, and had gone to the emergency room at East Jefferson General Hospital for treatment immediately afterwards. Hill had been bedridden for "at least" a month after this accident and (as of the trial date) had not been back to work.
Hill testified that he had experienced problems with his legs after the second accident and was suffering "throbbing" pain in his back and "constant" pain in both of his legs even as of the trial date.
Dr. Richard Hages had first seen Hill on May 8th, 1995, the date of Hill's auto accident, and continued to treat Hill through August 18th of that year. At Hill's first visit, he had complained of low back, neck and shoulder pain, and Dr. *826 Hages found positive symptoms corresponding with Hill's complaints. Dr. Hages initially diagnosed a mild neck sprain and a low back sprain, noting that the back injury had aggravated a congenital abnormality located in Hill's lower back. Dr. Hages continued to treat Hill, using various modes of therapy and seeing Hill roughly once a week. At a June 7th visit, after Hill had complained of increased pain with forward bending, Dr. Hages changed Hill's therapy regimen.
Dr. Hages saw Hill within a day of Hill's on the job accident, and at this time Hill complained of a severe increase in lower back pain and leg pain. Hill's therapy was continued, and Dr. Hages testified that though Hill had begun to improve, he had eventually recommended Hill to an orthopedic specialist.
Finally, Dr. Hages testified that he had ultimately suspected a more serious injury than the sprains originally diagnosed after the automobile accident. Dr. Hages would not rule out the automobile accident as the cause of a possible disc injury: he testified that Hill's complaints of increased pain caused by bending forward, made before the second accident, are a "traditional" symptom of disc involvement. Likewise, Dr. Hages stated that radicular pains (Hill's complaints of leg pain, made after the workplace accident) often do not start immediately after an accident though (the auto) accident may have caused a disc injury.
Dr. George A. Murphy, M.D., an orthopedic specialist, treated Hill on Dr. Hages's referral. When Dr. Murphy first saw Hill, on July 27th, 1995, his exam did reveal some lingering positive symptoms. He recommended an MRI and prescribed muscle relaxers and anti-inflammatory medication.
The results of the MRI revealed the presence of some degenerative changes to Hill's lower back in addition to a herniated disc, also located in the lower back. An EMG, done at a later date, showed some nerve damage down both sides of Hill's low back.
Dr. Murphy initially recommended a single epidural steroid injection; it was unavailing, however, as was the therapy which Dr. Murphy recommended after the steroids failed. Dr. Murphy ultimately recommended that Hill undergo surgery, and though Hill had not had surgery as of the trial date, Dr. Murphy testified that the surgery is indicated as long as Hill is displaying the above symptoms.
Dr. Murphy agreed with Dr. Hages that the disc injury may have been present as early as the auto accident, noting, as had Dr. Hages, that radicular complaints typically develop slowly after an accident. Dr. Murphy testified that it is not really possible to say how much each accident contributed to the "ultimate disc problem" which led to the recommendation of surgery. Finally, Dr. Murphy stated that the degenerative changes would have played a part in Hill's worsening back problem, noting that each injury would have "kind of added" to an already unstable condition.
At the conclusion of trial, the judge awarded Hill twenty-seven thousand dollars in general damages plus medical special damages and court costs. A written judgment was signed September 20th, 1999.
Allstate's Motion and Order for Suspensive Appeal was filed on October 7th, 1999, and Allstate now raises only this one assignment of error:
The trial court failed to apportion $27,000.00 damages amongst separate accidents occurring weeks apart where evidence indicated a significant change in appellee's physical condition before and after the second accident.

LAW AND ANALYSIS
As Allstate's only assignment of error, they argue that the trial judge was in error for having failed to "apportion" damages between the two accidents described in Hill's testimony. However, we know of *827 no mechanism available to divide liability between a worker's compensation payee and a tort defendant when the negligence action does not arise out of a work-related accident. This notwithstanding, Hill should not be unable to recover whatever damages he can prove were caused by the party responsible in tort. And we note that Allstate does, in fact, raise the issue of causation in the body of their brief (and briefly, quantum).
The issue of causation is a proper subject for review on this record and as between these two parties, and, in addition, it is within our purview to review what has been fairly raised in brief. See, for example, Bowman v. Weill Const. Co., 494 So.2d 314 (La.1986). The issue, therefore, is what degree of causation was proved against Allstate as one of two parties each contributing to Hill's ultimate harm. Further, on the record under review, we have no doubt that the trial judge also isolated the issue of causation as the controlling consideration, and that he held Allstate liable only for those damages actually caused by their insured.
We begin our discussion by acknowledging the elemental principle that the assessment of damages is well within the discretion of the trier of fact. LSA-C.C. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993); Hymel ex rel. Hymel v. Thomas, 99-826, at 17 (La.App. 5 Cir. 12/21/99), 758 So.2d 201, 210; Stevenson v. Louisiana Patient's Compensation Fund, 97-709, at 3-4 (La. App. 5 Cir. 4/9/98), 710 So.2d 1178, 1181. The instant case presents a plaintiff with a herniated disc, a treating physician who has recommended surgery, and a general damage award of twenty-seven thousand dollars. So, though it is defendant who appeals here, we cannot imagine any circumstances under which this award would not be so low as to constitute a serious abuse of even vast discretionary powers. If there had been no question of causation. And while we see no error in the trial judge's award, there is no question that causation of damages was problematic under the facts presented.
The plaintiff in a personal injury action has the burden of proving by a preponderance of evidence that the injury complained of was caused by the accident giving rise to the suit. Maranto v. Goodyear Tire & Rubber Co., 94-2603, at 3 (La.2/20/95), 650 So.2d 757, 759; Crane v. Diamond Offshore Drilling, Inc., 99-166, at 19 (La.App. 5 Cir. 9/15/99), 743 So.2d 780, 792-3. Further, it is the plaintiffs burden to demonstrate that the injuries were not caused by an intervening act. Guillie v. Comprehensive Addiction Programs, Inc., 98-2605, at 8 (La.App. 4 Cir. 4/21/99), 735 So.2d 775, 778; Knight v. Miller, 503 So.2d 120, 125 (La.App. 5 Cir. 1987).
Even the evidence produced during Hill's case-in-chief left open the possibility that Hill's serious condition had been partly caused by his second accident, the one which occurred in the course and scope of Hill's employment. Further, Dr. Hages's tests revealed a congenital abnormality, and both Dr. Hages and Dr. Murphy found some degenerative changes to Hill's lower spine. There was no question, therefore, that Hill's greater harmthe need for back surgeryhad several contributing causes. And we can't believe that the trial judge awarded damages without having considered this.
Though Allstate argues that the trial judge did not "apportion" the damages between the two accidents, we cannot agree that the trial judge did not factor in an intervening cause in his assessment of damages attributable to the automobile accident. To say this would be to say that the trial judge simply ignored a substantial part of the evidence produced at trial. We cannot, we will not, say as much. Hill and both of his witnesses were questioned extensively on each accident and the symptoms experienced after each. The record shows that the trial judge himself questioned the medical experts. And even if *828 the findingthat Allstate's insured is only partly responsible for Hill's damages must be read into the judgment appealed, we must remember that even implicit findings of fact fall under the manifestly wrong standard of review. Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825, 826 (La.1987). Though, as noted, the trial judge was without authority to "apportion" damages between Allstate and Hill's employer, we have no doubt that the trial judge did cast Allstate for only those damages caused by them out of what, given Hill's ultimate condition, would have been a much, much greater award had there not been an intervening cause to consider.
Nor do we find any manifest error in the percentage of harm the trial judge did ascribe to the automobile accident. It must be remembered that there is a possibility that Hill's herniated disc was caused by the automobile accident. Though Allstate argues that the more serious symptomsHill's complaints of leg pain, the symptoms which indicate nerve root damagedeveloped after the second accident, both treating physicians testified that such complaints typically occur several weeks after the accident which causes a spinal injury. In addition, Hill had exhibited other symptoms of a disc injury, pain caused by bending forward, before the workplace accident.
Causation is a fact specific inquiry; great deference must be accorded the trier of fact on the question of factual causation. Rick v. State, Dept. of Transp. and Development, 93-1776, at 7-8 (La.1/14/94), 630 So.2d 1271, 1275; Crane, 99-166 at 20, 743 So.2d at 793. The trial judge was required to make a difficult decision on causation when both treating physicians were hard pressed to definitely pinpoint percentages of harm attributable to each accident. We don't see why the trial judge should be asked to do a better job than two medical experts; we know we could not.
Finally, we come full circle to the principle with which we began this discussion: we see no manifest error in the amount of damages awarded by the trial judge. As we noted immediately above, and hope we have stressed, Hill's award would have been significantly increased had he been able to recover damages for a herniated disc from a single tort defendant. There is no question that the automobile accident caused some degree of harm; there was an intervening, but not superseding, cause, resulting from an accident coming close behind the first one. We find the trial judge's computation of damages due Hill from Allstate to be well within his discretion.
For the above reasons, we affirm the judgment of the trial court with Appellant to pay all costs of this appeal.
AFFIRMED.