888 So.2d 265 (2004)
Audrey VOLION, Sherry Winfield and Margaret Volion
v.
John HENRY, his Insurance Company, State Farm Insurance Company, Jacqueline Henry and her Unknown Insurance Company, ABC Insurance Company.
No. 04-CA-294.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*266 Fred R. Defrancesch, LaPlace, LA, for Plaintiff/Appellant.
Richard L. Edrington, LaPlace, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and THOMAS F. DALEY.
SOL GOTHARD, Judge.
Plaintiffs Audrey Volion and Margaret Volion appeal from the trial court's judgment finding defendants only responsible for Audrey Volion's medical expenses between September 11, 2001 and January 18, 2002[1] and ordering defendants to pay $6,000.00 in general damages and $2,717.00 in medical expenses. For the reasons that follow, the judgment of the trial court is affirmed.
On May 21, 2002 Audrey Volion, Sherry Winfield and Margaret Volion filed a "Petition for Personal Injuries and Damages" against defendants alleging that on or about September 11, 2001 Audrey Volion was operating a vehicle owned by Margaret Volion, with Sherry Winfield as a guest passenger, when suddenly and without warning Jacqueline Henry, who was operating a vehicle owned by John Henry, struck plaintiffs' vehicle in the rear causing *267 plaintiffs to sustain serious personal injuries and damages. Subsequently, plaintiffs filed a "Partial Motion to Dismiss" and Sherry Winfield's portion of the suit was dismissed.
After a trial on the merits the trial court found in favor of plaintiffs and ordered defendants to pay $8,717.00 in total damages. It is from that judgment that plaintiffs appeal, seeking an increase in the award of damages.

FACTS
At trial plaintiff Audrey Volion (plaintiff) testified that on the night of September 11, 2001 she was driving her mother's car down Airline Highway after getting off from work at K-Mart in LaPlace. She stated that she "was stopped at the red light" at the intersection of Airline and Magnolia Street, and "had been stopped there since it was red," when she and her passenger (Sherry Winfield) "felt this sudden hit, impact." She described the impact as "light to medium." When asked what happened to her inside the car when the vehicle behind her rear-ended her, Ms. Volion testified, "I jerked forward. I got pushed forward."
Plaintiff stated that after the accident they pulled off on the side of the road. A state trooper then arrived and prepared a report. Included in the record is a State of Louisiana Uniform Motor Vehicle Traffic Crash Report.
Ms. Volion testified that there was damage on the right side of the back bumper of her vehicle. She also stated that her vehicle continued to be drivable after the accident and that as far as she could tell it had never been repaired. According to plaintiff the vehicle that struck her was damaged on the front passenger side of the car. She did not see any major damage to defendants' vehicle.
Plaintiff testified that right after the accident she drove herself to River Parishes Hospital. She stated that before the accident her body was feeling fine and after the accident she felt pain throughout her shoulder down through her back. At the hospital emergency room they gave her a muscle relaxer and she went home. She was not admitted to the hospital.
Ms. Volion testified that approximately a week after the accident she went to see a chiropractor, Dr. Robert Dale, complaining of pain in her neck into her left arm. She also testified that she complained about her lower back even though Dr. Dale's report did not include that complaint.
Plaintiff stated that she visited Dr. Dale three to four times a week for mostly ultrasound treatments "by my shoulder through my lower back." She further testified that during the course of her care, from September 19th to her second accident on January 18, 2002, she was only under Dr. Dale's care.
Ms. Volion testified that she was not able to go back to work at K-Mart in LaPlace and that she never did go back. According to plaintiff she was making $5.90 an hour at K-Mart and worked an average of approximately thirty hours a week. During the trial defense counsel objected to Ms. Volion's testimony regarding a claim for lost wages because "in the answer to the interrogatories, the witness indicates that she is not claiming lost wages." Plaintiff said she did not remember how she answered the interrogatory question "Were you making a claim for lost wages." She also stated that she was probably asked that same question at the deposition but did not remember her answer.
Ms. Volion further testified that her daily activities were restricted as a result of the injuries she sustained in the September 11, 2001 accident. She said she could *268 not lift her youngest son (two years old and weighing approximately 34 pounds at time of trial) and "Working. Being able to stand up." According to plaintiff the latter symptom persisted for about "four or five months after." She stated that she did stand up "[a]round my house and everything" and that she was able to do "basic house chores."
Ms. Volion testified that she was involved in a second motor vehicle accident in January of 2002. She explained that she was coming up Northwest 10th Street in Reserve and was slowing down when a man hit her from behind. She stated that the other driver told her he thought she wasn't going to stop at the yellow light.
Plaintiff testified that she told Dr. Dale about the second accident and continued seeing him. When asked if she experienced anything physically different from what she was experiencing prior to the second accident, Ms. Volion stated, "I just felt pain." When asked to explain what, if any, problems she was experiencing after the second accident, she testified "I continued to go to Dr. Dale, and he was more or less doing the same treatment, because it was just pain  I don't know."
On cross examination Ms. Volion was asked, "Now, by the time you had your second accident, your condition from the first accident had improved, had it not?" Her response was, "I felt that it was improving." Then she was asked, "So you were getting better?" She answered, "My condition was improving." Defense counsel then asked, "Well, doesn't that mean it was getting better?" She answered "Yes." Ms. Volion was then asked if her condition worsened following the second accident. She testified, "I stayed the same. But yes, it got worse." When asked to repeat her response she stated, "It was mostly the same, yes." Defense counsel then asked, "After the second accident, your condition got worse?" Ms. Volion answered, "Yes." On redirect plaintiffs' counsel asked Ms. Volion to describe her physical condition before and after the second accident (January 18, 2002). Ms. Volion stated, "It's more or less the same."
Plaintiff said she sought treatment from Dr. Stuart Phillips, an orthopedic surgeon. However, she admitted that consultation did not occur until after her second accident. She also testified that she did not have any diagnostic studies done until after the second accident at which time she had an MRI and a nerve conduction study.
On cross examination Ms. Volion was asked if her presenting complaints to Dr. Phillips were about the second accident. She testified, "It was from everything." Defense counsel then asked if Dr. Phillips' March 14, 2002 report was correct when it stated that her injury date was January 18, 2002. Ms. Volion answered, "If that's what he wrote, I guess it is." Defense counsel further asked if it was correct that she went to see Dr. Phillips about the second accident. Ms. Volion testified, "It was from both of them." Ms. Volion did agree that when she went to see Dr. Phillips after the second accident she told him that she had planned to return to work that Monday. She testified that she has worked as a substitute teacher.
Ms. Volion further testified that in August of 2002 she was involved in a third accident. She said at the time she was still being treated by Dr. Dale and Dr. Phillips for her previous problems. Plaintiff stated, "I was on Airline bringing my son to school and this woman came out of a parking lot and she came across the Airline and hit me in my door."
When asked what kind of problems she was experiencing after the third accident, Ms. Volion testified, "It was more or less the same." She also testified that she was *269 still experiencing problems, specifically in her lower back. When asked if the pain was any different today than it was after the first accident, she said yes. When asked to quantify the pain she testified, "It's more." She also stated that she is right-handed and that her complaints of pain are on her left side.
Ms. Volion agreed that the second accident "made the things that happened, as a result of the first accident, worse." And she agreed that the third accident made things even worse. She further testified that she filed two additional lawsuits, one for the January 18, 2002 accident and one for the August 2002 accident, both pending at time of trial.
Included in the record is a letter from chiropractor Dr. Robert R. Dale, dated May 7, 2002. Dr. Dale states that Ms. Volion originally presented to his office on September 19, 2001 complaining of cervical and upper thoracic pain, severe left shoulder pain, muscle spasms, left arm weakness, and left arm numbness. Dr. Dale's diagnosis was cervical sprain/strain injuries, cervicalgia, muscle spasm, myalgia, post traumatic shoulder bursa swelling, cervical brachial syndrome, and cervical radiculapathy. Conservative treatment was initiated and the protocols produced improvement and therefore were continued. According to Dr. Dale, during the course of treatment Ms. Volion was involved in her second motor vehicle accident (January 18, 2002) causing injuries in the same areas "which makes the situation somewhat complicated." Dr. Dale billed his treatment during January 2002 to the second motor vehicle accident. According to Dr. Dale there were additional treatments attributed to the September 11, 2001 accident on "March 1, August 13, 20 and 27, and as of the August 27, 2002 she was released from care pertaining to these injuries." Since Dr. Dale's letter is dated May 7, 2002 and he begins the letter stating that Ms. Volion was last treated in his office on March 27, 2002, pertaining to injuries that she received in the September 11, 2001 motor vehicle accident, it appears he meant March instead of August.
Also included in the record is the deposition of Dr. Stuart Phillips, a board-certified orthopedic surgeon. Dr. Phillips testified that Ms. Volion first presented to his office on March 14, 2002 (after the second motor vehicle accident) for the purpose of orthopedic evaluation and treatment for an accident.
Her history was that of a twenty-one year old overweight woman who gave a motor vehicle accident injury date of January 18, 2002. She was referred by her chiropractor Dr. Robert Dale after her condition did not improve with treatment. She was complaining of low back pain that was severe and ran into her left hip and thigh. And she noticed numbness and weakness in her leg. She could reproduce the back pain with coughing and sneezing. And she had severe cervical pain that ran into both shoulders and arms with numbness and tingling and weakness in both hands. She also complained of headaches and dizziness and blurred vision. She stated she had not been working since the accident but planned to return to work as a substitute teacher soon.
According to Dr. Phillips, Ms. Volion reported a previous history of injury in a September 2001 motor vehicle accident wherein she sustained an injury to her neck and back. She further reported that she was under the care of Dr. Dale and still being actively treated when the second accident occurred.
Dr. Phillips testified that Ms. Volion said she had "low backache" before the second accident that was worsened by the second accident. She also reported having new pain in her left hip. In the cervical spine *270 area she reported neck and arm pain which she said had gotten worse following the January 2002 accident. His initial diagnosis was an injury to her neck and back with her main symptoms being in her neck. He thought that she probably did not have a ruptured disc and felt it was a cervical strain with facet joint abnormalities. He suggested continued treatment with chiropractic and physical therapy along with analgesics and muscle relaxers.
Dr. Phillips further testified that Ms. Volion's MRI (performed on February 14, 2002, post first and second accidents) showed a moderate lumbar disc injury with a protruding lumbar disc on the right. Her leg pain was on the left. According to Dr. Phillips it is possible to have contralateral leg pain from a ruptured disc, but it is not common. He further testified that the radiologist felt that the disc injury was impinging on the first sacral nerve root, and Dr. Phillips concurred. He did not feel she was a candidate for invasive testing for her lumbar disc injury. He felt it would be reasonable for her to go back to light work and "follow her and that we would see what happened."
Dr. Phillips next saw Ms. Volion on September 17, 2002, after her third motor vehicle accident in August 2002. She complained of some stiffness in her neck and moderate pain in her left arm. There was moderate lumbar spine pain with no radiating pain into the lower extremity. The cervical exam showed muscle tenderness with mild to no muscle spasm and mild loss of motion. At the lumbar spine she had tenderness with mild to moderate muscle spasm and loss of motion. Dr. Phillips' conclusion at this visit was that Ms. Volion was doing better.
Her next visit with Dr. Phillips was on October 29, 2002. There had been no new injuries. She was still having neck and back pain and she still had muscle spasm in the cervical spine, but the medicine was working. She was not having a lot of lumbar complaints.
Dr. Phillips testified that Ms. Volion did not show up for her next appointment on January 13, 2003 and has not returned to their office. He stated that he did not subscribe a percentage of disability because he normally does that when a patient is discharged.
His prognosis was that Ms. Volion has a chronic cervical strain in her neck (injury to the ligaments). He did not think she had a ruptured disc, nor did he think she was going to need any surgery.
He noted that she has had symptoms for well over a year, that her condition is probably going to be chronic, and that she's probably going to have mild symptoms for the foreseeable future.
He also noted that she has a herniated disc that was treated appropriately resulting in the expected recovery. She had relief of her leg pain and her reflexes came back. But the scarring on her torn ligaments gives her a certain loss of function in repetitive lifting. She also has an increased liability to re-injure.
When asked about the two accidents (September 11, 2001 and January 18, 2002), Dr. Phillips testified that Ms. Volion reported that "the symptoms were present at the first time and aggravated at the second time. And I don't have any reason to disagree with that." But he also testified that he did not see her before the second accident so he would have to defer to her chiropractor as to how bad she was when the first accident occurred. He continued, "If that is not the case and the doctor who was treating her felt that she is incorrect, I wouldn't have any way of arguing one way or the other."
Dr. Phillips further testified that there is no way to tell from Ms. Volion's MRI *271 (performed February 14, 2002, after the second accident) which findings related to the first accident and which related to the second accident. He stated that the only way of deciding what caused what is by history and that is what he did. He did not have the benefit of any records or reports from Dr. Robert Dale, only the MRI. And he did not have any information as to the severity of the first accident.
Dr. Phillips agreed with defense counsel that he was treating Ms. Volion's symptoms and that "the source of those symptoms, at least, the history of the symptoms, as to when they occurred, were less important than the fact that she had them and [he] felt she required treatment." He further noted that Ms. Volion's weight was something that could cause low back pain.

LAW
In brief to this court plaintiffs assign two errors for our review. In the first plaintiffs argue the trial court erred by holding that plaintiff Audrey Volion had substantially recovered from the September 11, 2001 accident by the time of her January 18, 2002 accident so that defendants are not liable for any injuries or symptoms post-dating January 2002.
Plaintiffs argue that Ms. Volion was asymptomatic before the accident on September 11, 2001, and the two subsequent accidents (January 18, 2002 and August, 2002) exacerbated the injuries sustained in the September 11, 2001 accident.
Defendants argue that Ms. Volion's injuries from the September 11, 2001 accident were substantially resolved before the subsequent accidents. Therefore, defendants reason that the accidents in January and August of 2002 were intervening causes for which defendants herein are not responsible.
The plaintiff in a personal injury action has the burden of proving by a preponderance of evidence that the injury complained of was caused by the accident giving rise to the suit. Further, it is the plaintiff's burden to demonstrate that the injuries were not caused by an intervening act. Hill v. Abraham, Jr., 00-327 (La.App. 5 Cir. 9/26/00), 770 So.2d 824, 827. Causation is a fact specific inquiry with great deference being accorded the trier of fact on the question of factual causation. Id. at 828.
A trial court's finding of fact may not be reversed absent manifest error or unless clearly wrong. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Miller v. Clout, 03-0091 (La.10/21/03), 857 So.2d 458, 462.
On the record before us we find a reasonable factual basis exists to support the trial court's finding that Ms. Volion had significantly recovered from the September 11, 2001 accident by the time of the January 18, 2002 accident. Ms. Volion testified that her condition was improving and that she was getting better before the second accident. The only diagnostic medical tests were conducted after the second accident. Further, with the exception of the emergency room visit, only her chiropractor Dr. Robert Dale treated her before the second accident. Ms. Volion did not seek any other medical treatment until after the second accident. Accordingly, we find no error in the trial court's factual finding that Ms. Volion had substantially recovered from the September 11, 2001 *272 accident when the January, 2002 accident occurred.
In the second assignment of error it is asserted that the damages awarded are insufficient to compensate for Ms. Volion's injuries. As far as this argument extends to medical damages awarded, we find the trial court correctly limited compensation to those medical expenses incurred before the second accident for reasons discussed in the first assignment.
Our standard of review for the award of general damages was recently set forth by this court in Angelle v. Delery, 02-0644 (La.App. 5 Cir. 11/26/02), 833 So.2d 469, 475:
Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.
In determining general damages the trial court considered Rebstock v. Cheramie, 95-1388 (La.App. 1 Cir. 2/23/96), 673 So.2d 618, a factually similar case wherein plaintiff had six to seven months treatment for soft tissue injury; cervical and lumbar strain; the possibility of permanent injuries; and residual pain. The trial court awarded plaintiff $6,000.00 for past, present and future mental and physical pain.
Accordingly we find no abuse of discretion in the trial court's award of $6,000.00 in general damages in the case before us.
AFFIRMED.
NOTES
[1] Plaintiff Audrey Volion was involved in three motor vehicle accidents. The first, September 11, 2001, involved the defendants herein. The two subsequent accidents occurred on January 18, 2002 and in August of 2002. The two subsequent accidents are the subject of two unrelated lawsuits.