833 So.2d 469 (2002)
Anna N. ANGELLE
v.
David L. DELERY, Rachel Douglas, and Allstate Insurance Company.
No. 02-CA-0644.
Court of Appeal of Louisiana, Fifth Circuit.
November 26, 2002.
*470 James E. Stovall, James E. Stovall, LLC, Covington, LA, for Anna N. Angelle, Plaintiff-Appellee.
Lucia G. Hawks, Law Offices of Harold G. Toscano, New Orleans, LA, for Allstate Insurance Company, Defendant-Appellant.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this personal injury lawsuit, after trial, the jury found that the defendant-driver caused the automobile accident, which caused the injury to plaintiff's shoulder and awarded damages. The trial court subsequently granted plaintiff's motion for judgment notwithstanding the verdict and increased the amount of general damages awarded to the plaintiff. For the following reasons, we affirm.

Facts
On Wednesday, October 27, 1999, the plaintiff, Anna Angelle, and the defendant, David Delery, were involved in a side-impact collision near the intersection of Dickory Avenue and Citrus Boulevard in Harahan, Louisiana. In the accident, the front of the defendant's vehicle collided with the driver's side of the plaintiff's vehicle, causing substantial damage to the driver's door and puncturing the front tire on the driver's side.[1] Although neither driver sought medical attention immediately after the accident, the 76-year-old plaintiff stated that the collision made her feel "like all the flesh was taken off [her] bones."
The next day, she felt pain in her left upper torso, which made it difficult to breathe, so she made an appointment for Friday, October 29, 1999, with her family physician, Dr. Miles. She presented to Dr. Miles with complaints of headaches and pain and bruising on her left side, specifically at her ribs, her left arm, her *471 left elbow, her left shoulder and her neck. He advised a conservative treatment of over-the-counter pain relievers.
On December 27, 1999, Mrs. Angelle visited her orthopedist, Dr. Marshall Book, complaining of pain in her left shoulder and left rib pain. While Mrs. Angelle had previously experienced mild pain in her neck, back, and shoulder associated with osteoarthritis, on that visit, she complained of pain in her left shoulder. That day, Dr. Book injected Mrs. Angelle's left shoulder with steroids.
Mrs. Angelle did not experience relief so, on December 29, 1999, she sought further treatment, at the advice of her attorney, from Dr. Stewart Altman, a general surgeon. She presented with headaches and nausea as well as pain in her neck, left elbow and left shoulder. Dr. Irra, who is Dr. Altman's associate, diagnosed Mrs. Angelle with cervical and lumbar strain as well as post-traumatic muscle tension headaches. He prescribed medication, heat therapy and a TENS unit to alleviate her pain.
Mrs. Angelle continued treatment with Dr. Altman until May 15, 2000 when he referred her to Dr. Seltzer, an orthopedic surgeon. In the meantime, Mrs. Angelle returned to Dr. Book on April 12, 2000, complaining of acute shoulder pain in her left shoulder. He again injected her shoulder with steroids.
On May 23, 2000, Mrs. Angelle presented to Dr. Seltzer with complaints of neck pain, shoulder pain which radiated down her left arm, and difficulty in lifting her left arm. He prescribed oral medication. On June 14, 2000, at Dr. Seltzer's direction, Mrs. Angelle underwent an MRI of her left shoulder, which revealed spurring with the potential for development of chronic impingement syndrome and complete tear in the distal supraspinatus muscle of the rotator cuff.
On August 15, 2000, Mrs. Angelle returned to Dr. Seltzer who, after reviewing the results of the MRI, recommended two courses of treatment for Mrs. Angelle's left shoulder: conservative treatment with oral medication or more aggressive treatment with surgery. On December 12, 2000, Mrs. Angelle, while trying to avoid using her left arm, ruptured a tendon in her right bicep through overuse.
Although Mrs. Angelle continued to suffer with pain in her left shoulder, she was reluctant to undergo surgery until February of 2001. When Dr. Seltzer sent her to Dr. Miles to obtain clearance for shoulder surgery, Dr. Miles refused to clear her for surgery because he detected a systolic murmur. Dr. Miles referred Mrs. Angelle to cardiologist, Dr. Edward St. Martin.
When Dr. St. Martin examined her on April 6, 2001, he discovered that she had critical aortic valvular stenosis. On April 23, 2001, Mrs. Angelle underwent an aortic valve replacement. As of November 28, 2001, Mrs. Angelle continued to suffer with shoulder pain but had not yet been released by Dr. Miles to undergo the shoulder surgery.

Procedural History
On October 17, 2000, plaintiff filed this lawsuit against the driver, David Delery; the vehicle owner, Rachel Douglas; and the driver's liability insurer, Allstate Insurance Company. On November 26, 2001, the matter proceeded to a trial.[2] After hearing two days of testimony and evidence, the jury unanimously found that David Delery's negligence was the proximate *472 cause of the automobile accident on October 27, 1999. Further, the jury attributed fault 100% to Delery and awarded Anna Angelle a total of $36,645 in damages, with general damages of $20,000.00[3] and medical damages of $16,645.00.[4] Plaintiff subsequently filed a Motion for Judgment Notwithstanding the Verdict. On January 24, 2002, after a hearing, the trial judge granted plaintiff's motion and increased plaintiff's general damages award to $50,000.00.
On February 14, 2002, counsel for Delery and Allstate filed a Motion for suspensive Appeal. Plaintiff timely filed an answer to the appeal seeking an increase in the award of general damages.

Law and Argument
In their appellate brief, defendants Delery and Allstate assert that "the trial judge erred in granting judgment notwithstanding the verdict by using an improper standard and because the amount awarded by the jury for general damages was within the range, which reasonable minds could award." The defendants specifically contend that the trial court used the improper standard of his own opinion when he granted the JNOV. Further, the defendants argue that the evidence in this case is not so favorable to the plaintiff that reasonable and fair-minded persons could not arrive at any verdict in favor of the defendant. Finally, they argue that the jury was not clearly wrong in its award of general damages to the plaintiff.
La. C.C.P. art. 1811 governs judgments notwithstanding the verdict (JNOV). It provides that a motion for judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages, or both. The standard to be used in determining whether a JNOV has been properly granted has been set forth in our jurisprudence as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La.1991).
*473 In determining whether the trial court erred in granting the JNOV as to quantum, the appellate court uses the same criteria: could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low? If reasonable persons could differ, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if reasonable persons could not differ, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal for manifest error. Mendoza v. Mashburn, 99-499 (La.App. 5 Cir. 11/10/99), 747 So.2d 1159.
In this matter, we have reviewed the entire record, including the two-day trial transcript. At trial, plaintiff presented the testimony of Dr. Daniel Seltzer, an orthopedic surgeon. In his medical opinion, Mrs. Angelle's MRI revealed that she had suffered a complete tear of the distal supraspinatus muscle of her left rotator cuff, which was consistent with her complaints of serious pain and difficulty in raising her left arm. He also stated that, based on the history reported by Mrs. Angelle, the injury to her rotator cuff was attributable to her car accident on October 27, 1999.
Further, he stated that an individual who suffers a blow from the side while their hands are braced against a static object, like a steering wheel, could experience sufficient force to produce tearing of the rotator cuff. He also stated that it is likely that, for several reasons, the rotator cuff of a person of 76 years old would be more prone to injury than one of a younger person. Finally, he explained that, Mrs. Angelle, as is not uncommon in a person of 76 years old, may have signs of osteoarthritis in her back and neck but that condition is separate from, and did not cause or contribute to, the torn muscle in her rotator cuff.
Mrs. Angelle also testified at trial. She testified that, before her accident, she had experienced minor neck and back aches, but after her accident, she has experienced severe pain in her left shoulder. Now, because of the pain in her shoulder, she is not able to play with her grandchildren like she did previously. She cannot perform simple functions, like combing her hair or grocery shopping, like she used to because she cannot lift her left arm. She does not sleep well because the pain in her shoulder wakes her at night. Although she is scared to have surgery, she is now willing to undergo surgery to alleviate the constant pain in her shoulder.
Mrs. Angelle's daughter, Alma Clarke, also testified. Before the accident, her mother was very active but now she is not the same person. To her, her mother seems very depressed, cries a lot, and complains of pain frequently.
In its case-in-chief, David Delery testified and admitted liability for the accident. The defendants Delery and Allstate also submitted testimony from orthopedic surgeons, Dr. David Aiken, Jr. and Dr. Marshall Book. At Allstate's request, Dr. Aiken examined Mrs. Angelle, who told him that she had pain in her neck, her lower back, and nearly constant pain in her left shoulder. He testified that his examination revealed an elderly adult female with "subjective complaint of tenderness in the neck and complaint of pain in the shoulder when she moved her shoulder ... and I found no objective complaints that would be related to the car accident."
Importantly, Dr. Aiken did not review Mrs. Angelle's MRI. When asked by defense counsel whether there were ways besides sudden trauma that a person could suffer a torn rotator cuff, Dr. Aiken opined *474 that a person could suffer a chronic tear over a number of years, which gives a minor ache over a long period of time. He also testified that pain and inflammation of the shoulder tendon from a slight tear in the muscle or tendon, usually diagnosed as tendonitis, can be the beginning of a chronic rotator cuff tear. He opined that, unless Mrs. Angelle complained of acute pain at the time of the car accident, he would not relate Mrs. Angelle's torn rotator cuff to the accident since she did not complain of acute pain in her left shoulder at the accident scene.
Dr. Book, the plaintiff's treating orthopedist before the accident, testified that she had presented with tendonitis in her right shoulder as early as 1993 and, on January 21, 1997, two years before the accident, Mrs. Angelle presented with pain, which she described as severe, in her left shoulder. Dr. Book also testified that a person of Mrs. Angelle's age, with degenerative changes like those experienced by Mrs. Angelle, would be more susceptible to a rotator cuff injury, which may have been present even before her automobile accident. Dr. Book admitted, on cross examination, however, that in the seven years that he treated her before this accident, he had not x-rayed her shoulder and never diagnosed Mrs. Angelle with either impingement of the left shoulder or a rotator cuff injury. He admitted that, because of her age, he had considered osteoarthritis to be the source of her pain.
After he granted the JNOV, the trial judge increased the jury's original general damage award of $20,000.00 to $50,000.00. At the JNOV hearing, the trial judge stated that,
... the jury's verdict would have been reasonable if they would have said, `I'm going to give her 25, 30, 50, 75 percent of the medical expenses,' ... and they would have distinguished between preexisting injuries.... But the jury's verdict to the Court said ... `[Mrs. Angelle's] torn rotator cuff is caused by the accident,' and they only gave her $15,000.00[sic].
* * *
I think in the community it is perceived that ... when you take a scalpel to somebody, the minimum amount of damages that is satisfactory is $50,000.00.
* * *
The question comes down in this case is to whether I conclude there is one or two because of the heart. Sorry, Counsel, but I do think that $50,000.00 if the minimum, but I think that $50,000.00 is for the rotator cuffI'm not going to grant another award for the heart.
* * * *
We recognize that the trial court did not accurately verbalize the standard of review in granting the JNOV as to the jury's general damage award. As previously stated, a JNOV should only be granted if the trial court, after considering all of the evidence in the light most favorable to the party opposing the motion, finds that it points so strongly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue.
It is our opinion, after reviewing the record, though that the trial court correctly granted a JNOV in this case. The jury concluded that Mrs. Angelle suffered a substantial shoulder injury because of the car accident caused by Delery's negligence. It is our opinion, after our thorough review of the record, that considering the impact of this injury on Mrs. Angelle, the jury's awards for physical and emotional suffering and loss of enjoyment *475 of life were unreasonably and abusively low.
Even when reasonable inferences and factual questions are resolved in favor of the defendants, the record still indicates that, although Mrs. Angelle suffered from aches and pains related to osteoarthritis in her neck, back and right shoulder before the accident, the pain in her left shoulder is directly attributable to the car accident. When she was treated one time more than two years before the accident for pain in her left shoulder, her treating physician, who testified for the defense, attributed that pain to osteoarthritis, which is distinct from the rotator cuff injury that the MRI confirms is present in Mrs. Angelle's left shoulder. Thus, we find that, even though he misstated the standard, the trial judge did not err in granting the JNOV as to the jury's general damage award.
The next inquiry is whether the trial court abused its discretion in the amount of general damages awarded after granting the JNOV. General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." Keeth v. Dept. of Pub. Safety & Transp., 618 So.2d 1154, 1160 (La.App. 2 Cir.1993).
Vast discretion is accorded the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn, 623 So.2d at 1260. As the Louisiana Supreme Court explained in Youn:
Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award.
Id. at 1261.
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. National Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089. Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). Our exhaustive review of the record leads us to conclude that the trial court was not manifestly erroneous in its award. We find, therefore, that defendants' assignment of error lacks merit.
The plaintiff, in her appellate brief, argues that the trial court and jury were clearly wrong in their award of general damages. She argues that the evidence presented at trial shows that, as a result of the accident, which was entirely Delery's fault, she suffered a complete tear in her left rotator cuff, which prevented use of her left arm and eventually led to a rupture of the tendon in her right bicep. She argues that the awards for physical and mental pain and suffering were "woefully *476 inadequate" to compensate her. Further, she argues that she should have been awarded damages since she had to undergo heart surgery as a prerequisite to the shoulder surgery, which she must undergo to repair the physical damage caused by the accident.
We agree with the plaintiff that the jury was clearly wrong in its award but we do not agree that the trial judge erred. With respect to plaintiff's claim that the award of $50,000.00 is "woefully inadequate" to compensate her, we reiterate that the trier of fact's vast discretion is such that an appellate court should rarely disturb an award of general damages. Youn, supra. We will not disturb the trial court's award on appeal.
Finally, a plaintiff ordinarily may recover from the tortfeasor reasonable medical expenses, past and future, which he incurs as a result of an injury. White v. Longanecker, 93-1122 (La.App. 1 Cir.5/23/94); 637 So.2d 1213, 1218, writ denied, 94-1704 (La.10/7/94); 644 So.2d 640. Here, plaintiff suffered from aortic valvular stenosis, which required surgery. Based on the information presented in the record, it appears that the plaintiff would have eventually had to have this surgery, even if she had not been involved in this accident. We conclude, therefore, that the plaintiff failed to establish any causal connection between the car accident and her heart problem. Accordingly, we find no merit in plaintiff's assigned error.
For the foregoing reasons, we affirm the trial court's ruling in this case. Costs of this appeal are to be paid by the defendants.
AFFIRMED.
NOTES
[1] The collision caused over $5300.00 in damages to plaintiff's 1998 Dodge Neon.
[2] After plaintiff rested and outside of the presence of the jury, the defense moved to dismiss Rachel Douglas, the owner of the vehicle that David Delery was driving when he collided with Mrs. Angelle. The trial judge granted the motion.
[3] The jury awarded $7,000.00 for past, present, future pain and physical suffering; $3,000.00 for past, present, future mental pain and suffering; $5,000.00 for disability; and $5,000.00 for loss of enjoyment of life.
[4] The jury awarded $4,245.00 for past medical expenses and $12,400.00 for future medical expenses.