ROBERT A. CHAISSON, Judge.
[ gThis is an appeal by Brenda Davis from a judgment in her favor and against Henry Vosbein and his insurer, State Farm Mutual Automobile Insurance Co., as a result of an automobile accident. A jury awarded Ms. Davis $9,000 in past medicals, $25,000 in future medicals, and $5,000 for loss of enjoyment of life. It also found her 25% at fault for the accident. For the following reasons, we amend the judgment to award an additional $40,000 for pain and suffering, and we set aside the finding of 25% fault on Ms. Davis’ part, and instead find Mr. Vosbein 100% at fault. In all other respects, the judgment is affirmed.
FACTS AND PROCEDURAL HISTORY
On July 31, 2010, Henry Vosbein was taking his boat out for a test run. In order to leave his home on Carrie Lane while pulling his 22-foot trailered boat, he had to exit his driveway in the opposite direction of his intended travel, perform a turnaround maneuver at the intersection of Carrie Lane and Geranium Drive, and then proceed back down Carrie Lane in front of his house to reach the Lafitte-Larose Highway. It was while Mr. Vos-bein was attempting this turnaround maneuver that this accident happened.
Mr. Vosbein would normally perform the turnaround maneuver by turning left from Carrie Lane onto Geranium Drive and then stopping once his vehicle and |strailered boat were aligned. He would then back straight across the intersection until his vehicle had completely cleared the intersection, and then turn left back onto Carrie Lane to proceed to the Lafitte-Larose Highway. On the date of this accident, as Mr. Vosbein was backing his vehicle through the intersection, the trim tab on the back of his boat struck the front hood of Ms. Davis’ vehicle, which was stopped on Geranium Drive at its intersection with Carrie Lane.
Ms. Davis filed suit against Mr. Vosbein and his automobile liability insurer, State Farm, alleging that she had suffered a torn rotator cuff and injuries to her cervical spine in the accident. After a trial on the merits, the jury awarded Ms. Davis $9,000 in past medical expenses, $25,000 in future medical expenses, and $5,000 in damages for loss of enjoyment of life. The jury specifically rejected any award for past and future pain and suffering by entering “0” for those items on the jury interrogatory form. It also found Ms. Davis 25% at fault in causing the accident. Judgment was entered in accordance with *102 the jury interrogatories, and Ms. Davis now appeals, contending that the jury erred in 1) finding her 25% at fault, and 2) not awarding any damages for past and future pain and suffering. For the following reasons, we agree with both assertions.
LAW AND DISCUSSION
On the issue of allocation of fault, the standard of review is manifest error. O’Riley v. City of Shreveport, 30,107 (La.App. 2 Cir. 1/23/98), 706 So.2d 213, rehearing denied, writ denied, 98-0752 (La.5/1/98), 718 So.2d 418. In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985), the Court set forth a number of factors to be considered in allocating fault pursuant to La. C.C. art 2323. These are 1) whether the conduct was inadvertent or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actors, and 5) any extenuating |4factors which might require the actor to proceed with haste, without proper thought.
In the present case, we note that La. R.S. 32:281 provides that “[t]he driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic.” This statute has uniformly been interpreted to impose a high duty of care on the driver of a backing vehicle to ensure that it is safe to do so. See, McDonald v. Hollingsworth, 02-131 (La.App. 5 Cir. 6/26/02), 823 So.2d 408, and cases cited therein. It is evident that Mr. Vos-bein violated this statute.
Mr. Vosbein testified that as he turned left onto Geranium Drive and came to a stop, he did not see any vehicles at the intersection, but that as he was backing up, a white pick-up truck came up to his right on Carrie Lane and stopped at the stop sign. He further testified that he continued backing until he felt resistance, which he compared to backing the boat trailer into soft sand. He admitted to hearing a horn blowing while he was backing, but said that he thought it was the driver of the white truck who was being impatient. After the collision, Mr. Vosbein exited his vehicle and discovered that the trim tab of his boat had run up onto the hood of Ms. Davis’ car on the driver’s side. He testified that he never saw Ms. Davis’ car prior to the collision, apparently because the boat blocked his vision of the road behind him through the rear view mirror, as well as the side mirrors. He said that when he stopped backing up, his vehicle was far enough through the intersection that the white truck was able to pass. A passenger in Mr. Vosbein’s vehicle, Lisa Crabtree, similarly testified that she never saw Ms. Davis’ car until after the collision.
Ms. Davis testified that when she drove up to the stop sign and stopped, she observed the trailered boat across the intersection on Geranium Drive, but it was 15not moving and appeared to be parked. She briefly looked at the driver of the white pick-up truck to her right on Carrie Lane, and when she looked forward, the trailered boat was backing through the intersection toward her. She testified that she sounded her horn, and when the boat came onto the hood of her vehicle on the driver’s side, she ducked down to her right to avoid possibly being struck if the boat came through her windshield. Because Mr. Vosbein and his passenger never saw Ms. Davis’ vehicle before the collision, they are not able to contradict this version of events. The damage to Ms. Davis’ vehicle also supports her testimony on this point.
There is no question that Ms. Davis was stopped at the stop sign for a sufficient amount of time to see Mr. Vosbein backing *103 up and to blow her horn to alert him of her presence. He acknowledged hearing the horn, but thought it came from the truck off to his right side. His statement that he did not see Ms. Davis’ vehicle in his mirrors is at least an implicit admission that the boat blocked his line of vision to the rear to such an extent that it completely obscured an entire automobile. In this circumstance, it is evident that he did not ascertain that the backing maneuver could be undertaken with reasonable safety because he could not tell from his mirrors if anything was on the road behind him. Neither did he take any other precautions, such as putting his passenger on the ground and using her as a lookout, to ascertain if it was safe to back up. Instead, he blindly backed the boat until he felt the resistance of the collision with the car.
In applying the Watson, supra, factors, it is evident that the jury’s attribution of 25% of the fault for this accident to Ms. Davis was manifestly erroneous. The evidence shows unequivocally that Ms. Davis was simply driving down the street, stopped for a stop sign, observed the boat and trailer backing toward her, and sounded her horn in warning to the backing driver. There was absolutely no | ^evidence to establish that she was negligent in any way. In this circumstance, we must set aside the jury finding of 25% negligence on Ms. Davis’ part, and cast Mr. Vosbein with 100% of the fault in this accident.
The second issue concerns the jury’s failure to award general damages for pain and suffering, while awarding $9,000 for past medical expenses and $25,000 for future medical expenses. In Green v. K-Mart Corporation, 03-2495 (La.5/25/04), 874 So.2d 838, the Court summarized the law as to inconsistent verdicts as follows:
The court of appeal stated that, in general, it was legal error for a jury to award special damages for medical expenses while at the same time denying general damages, citing this court’s opinion in Wainwright v. Fontenot, 00-0492 (La.10/19/00) [ (La.10/17/00) ], 774 So.2d 70. However, in Wainwright, this Court also pointed out, that “a jury ... can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compen-sable pain and suffering as the result of defendant’s fault.” Wainwright, 00-0492 p. 8, 774 So.2d at 76; see also Sallinger v. Robichaux, 2000-2269 p. 1 (La.1/5/01), 775 So.2d 437. When, as here, the jury has awarded special damages but has declined to award general damages, the reviewing court must determine whether the jury’s finding “is so inconsistent as to constitute an abuse of discretion.” Wainwright, 00-0492 p. 8-9, 774 So.2d at 76. If so, only then can the reviewing court perform a de novo review of the record. Id.
In the present case, by the time of trial nineteen months after the accident, Ms. Davis had incurred $9,000.00 in medical expenses and was still experiencing problems related to her injuries. The fact that the jury awarded Ms. Davis future medical expenses indicates that the jury believed that she continued to have injuries from the accident that would require further medical intervention. It would be unreasonable to assume that Ms. Davis would undergo a future surgery to correct her shoulder injury in the absence of some degree of continued pain. In these circumstances, there is no question that the failure to award any amounts for pain and suffering, while awarding $9,000 in past medical expenses and $25,000 in |7future medical expenses, is so inconsistent as to constitute an abuse of discretion. Having *104 so determined, our next inquiry is what amount of general damages is reasonable on the record before us.
Ms. Davis denied having suffered any injuries at the scene, and the police report so reflects. However, five days later, on August 5, 2010, she went to Dr. Vincent Michell, a general medical practitioner, with neck and shoulder complaints. Dr. Michell testified that his initial impressions were injuries to the neck and right shoulder. He prescribed anti-inflammato-ries and recommended heat and electrical stimulation for pain. At a second visit, on August 12, Ms. Davis was better but was still complaining of neck and shoulder pains. At a third visit, on September 9, x-rays were done, and an MRI was recommended. The MRI was performed on September 14. These tests revealed degenerative problems in the neck discs, and a tear in the right shoulder rotator cuff. Dr. Michell recommended that she see an orthopaedic surgeon. His opinion was that the accident had caused the rotator cuff tear, but had only exacerbated pre-existing problems in the neck region.
On September 29, 2010, Ms. Davis saw Dr. F. Allen Johnston, a neurosurgeon. Dr. Johnston reviewed the MRI and concluded that there was indeed a rotator cuff tear, as well as findings involving the neck discs at the C3-4, C4-5, and C5-6 levels. It was his opinion that the tear in the rotator cuff was the result of the accident, while the disc problems were probably pre-existing and only exacerbated by the accident. He indicated that Ms. Davis would need arthroscopic surgery to correct the rotator cuff, and that this procedure would cost $25,000. He noted that this one-day outpatient procedure involved making a small incision at the shoulder and inserting instruments to fix the tear. He did not believe that Ms. Davis was a candidate for surgery for the cervical discs, but rather thought that she | swould profit from conservative treatment. He indicated that if surgery were done on the three cervical discs, that procedure would cost above $100,000.
Between October 28, 2009, and January 18, 2012, Ms. Davis was seen twelve times by John D. Olson, who practices in neurology and electrodiagnosis. Dr. Olson’s treatments were directed towards the neck problems, but he did note the shoulder pain on a number of occasions in his reports.
Dr. Terry Habig, of the office of Southern Orthopaedic Specialists, performed an independent medical examination at the request of the defendants. Dr. Habig confirmed the tear in the rotator cuff and attributed this injury to the accident, primarily because Ms. Davis was asymptomatic before the accident and symptomatic afterwards. As to the discs, he noted the C5-6 problem and thought it was a degenerative condition which may have been exacerbated by the accident. He did not find the bulging of the discs at the C3-4 and 4-5 levels to be significant.
There was also cumulative evidence presented to show that Ms. Davis had incurred about $9,000 in medical expenses by the time of trial.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Court reiterated the rule that in reviewing damage awards, the appellate courts first look to whether the award is an abuse of the wide discretion of the trier of fact. Once it is determined that there has been an abuse, the appellate courts may then look to awards in similar cases, but may only raise or lower the award to the lowest or highest reasonable award on the record. Because we have determined that there was an abuse of discretion, we now look to *105 other cases involving similar circumstances.
The evidence in the present case established that Ms. Davis more probably than not suffered a rotator cuff tear in the accident, and the jury must have so found 19because it awarded her $25,000 in future medicals, the exact amount that the surgeon said it would cost to surgically repair that damage.
In Angelle v. Delery, 02-0644 (La.App. 5 Cir. 11/26/02), 833 So.2d 469, this Court determined that a general damage award of $50,000 was not abusively low for a plaintiff who suffered a rotator cuff tear which would require future surgery. It must be noted, however, that the holding of the case is not that $50,000 is the lowest award that could be made for a torn rota-tor cuff requiring surgery, but rather that the $50,000 figure was not so low as to constitute an abuse of the trial judge’s discretion. Also, the Court noted that the award under review included “physical and emotional suffering and loss of enjoyment of life.” Id., at 474-5. Finally, it is not clear in Angelle what the nature of the surgery was to be, except for a quote made by the trial judge as to “taking a scalpel to somebody.” Here, the surgeon testified that the surgery would be a one-day outpatient procedure in which only a small incision would be made to introduce other devices to repair the damage.
As to the cervical discs injuries, there was unanimity in the testimony of Ms. Davis’ treating physicians that these problems were probably pre-existing, and were only exacerbated by the accident. Dr. Ha-big, who conducted the independent medical review, was of the opinion that the bulging of two of the discs was of no significance. As to the C5-6, his opinion was that it was pre-existing, but may have been exacerbated in the incident. It was also shown in the records of Dr. Olson, who treated Ms. Davis for over a year, that for the most part she was using only over the counter medications for her neck pain. Thus, the jury could have reasonably found that the problem at C5-6 was the only exacerbation of a pre-existing condition caused by the accident, and moreover that this problem was amenable to relief by non-prescription medication.
hoThe jury made a $5,000 award for loss of enjoyment of life. In this Court’s opinion, an additional $40,000 in general damages is warranted. The total general damage award of $45,000 thus represents the lowest amount that would be reasonable on the record before us, considering both the rotator cuff and disc problems.
CONCLUSION
For the foregoing reasons, the general damage award to Ms. Davis is increased by $40,000. Additionally, the finding that Ms. Davis was 25% at fault is set aside and Mr. Vosbein is adjudged 100% at fault in causing this accident. In all other respects, the judgment is affirmed.

AMENDED AND AS AMENDED, AFFIRMED