ROBERT M. MURPHY, Judge.
| ¡¡.Defendants/cross-plaintiffs, the Louisiana Patient’s Compensation Fund and the Louisiana Patient’s Compensation Fund Oversight Board (collectively, “the PCF”), appeal from an adverse judgment after a jury trial rendered on November 27, 2012. The judgment awarded damages in favor of plaintiffs, Tyronglia Willis, individually and on behalf of her minor son, Ty’Kevion J. Kidd (collectively, “Plaintiffs”), and in favor of the PCF on its cross-claim asserted against defendants/cross-defendants, Abbott Laboratories, Hospira, Inc. (collectively, “Abbott/Hospira”) and Richard Breland. Plaintiffs and Abbott/Hospira, respectively, also appeal the trial court’s November 27, 2012 judgment. For the reasons that follow, we affirm the judgment in part, and reverse and vacate the judgment in part.
| .FACTS AND PROCEDURAL HISTORY
On March 21, 2005, plaintiff, Ty’Kevion J. Kidd, was admitted to Ochsner Clinic Foundation for heart surgery. At the time of his surgery, Ty’Kevion was approximately two and a half years old. He had no complications during the surgery. After the surgery was concluded, the child was given the medication, epinephrine, intravenously through a triple channel infusion pump known as the Plum XL3 infusion pump (hereinafter “the Pump”). The Pump was manufactured by Abbott Laboratories and provided to Ochsner under a lease agreement with Hospira, Inc., a spinoff corporation of Abbott Laboratories. The Plum XL3 infusion pump allows for the administration of up to three different primary medications to a patient through a plastic I.V. set that includes a plastic cassette. Abbott/Hospira designed the Plum XL3 to protect against the free-flow of medication. Specifically, the Plum XL3 *343 incorporates a safety mechanism, called the flow regulator, which automatically stops all flow of medication when the door is opened and the cassette is removed from the pump. This is known as an anti-free-flow device.
On the day of the incident, Dr. Lutifak Kashimawa (also known as “Dr. Luttie”), a pediatric critical care physician, was treating Ty’Kevion in the Pediatric Intensive Care Unit (“PICU”) during his post-operative recovery. At the time Ty’Kevion arrived in the PICU, he was receiving epinephrine through channel C of the Pump. Dr. Luttie remained in the PICU with the child for approximately forty-five minutes. After Dr. Luttie left the PICU, Nurse Christine Brauner McKearnan continued to monitor the child while in the PICU. At 1:45 p.m., Nurse McKearnan received an order from Dr. Luttie to discontinue the administration of epinephrine to the child. At that time, Nurse McKearnan discontinued the epinephrine by turning the Pump off. For approximately one hour after she turned the Pump off, 14Ty’Kevion remained stable. Dr. Luttie ordered Nurse McKearnan to begin transfusing blood to the child. Nurse McKearnan then removed the cassette containing the epinephrine from the Pump, but left the cassette and tubing connected to Ty’Kevion, and began to transfuse blood to Ty’Kevion through channel C of the Pump.
Shortly thereafter, around 3:00 p.m., Nurse McKearnan informed Dr. Luttie that Ty’Kevion was hypertensive, his pulse was increasing and he was not responding to pain medication. When Dr. Luttie arrived in the PICU, she noted that blood was coming out of the child’s breathing tube and quickly began to assess the child to determine what was wrong. Approximately twenty minutes later, the other nurse assisting Dr. Luttie, Nurse Emily Stolpa, looked at the Pump’s clear plastic drip chamber and noticed that the epinephrine bag was still flowing into the child. Nurse Stolpa immediately stopped the flow of epinephrine at that time. However, approximately three fourths of the epinephrine bag had already flowed into the child.
It was later determined that at some point after Nurse McKearnan removed the cassette containing epinephrine from the Pump, the Pump’s flow regulator malfunctioned and failed to automatically stop the flow of epinephrine due to a broken door roller in channel C of the Pump. The free-flow of epinephrine into Ty’Kevion caused his lungs to hemorrhage, which ultimately led to cardiac arrest and permanent anoxic brain injury, including right watershed infarcts, bilateral basal ganglia infarcts and cerebellar infarcts.
On February 17, 2006, the child’s mother, Tyronglia Willis, filed a medical malpractice action against Ochsner on behalf of her child and in her own name. Plaintiffs subsequently amended their petition on March 15, 2006, and again on March 17, 2006, to allege claims under the Louisiana Products Liability Act ¡ S(“LPLA”) against Abbott/Hospira and Richard Breland, the employee of Hospira who was in charge of maintaining the Plum XL3 pumps provided to Ochsner under the lease agreement. Subsequently, Ochsner agreed to tender the $100,000 statutory limit to Plaintiffs under La. R.S. 40:1299.44(0) of the Louisiana Medical Malpractice Act (“LMMA”), thereby admitting liability. On May 30, 2007, Plaintiffs filed a petition seeking court approval of Ochsner’s $100,000 tender, as well as a finding that said tender constitutes an admission of liability under La. R.S. 40:1299.44(0). Plaintiffs’ petition further sought to reserve their right to proceed against the PCF for damages in excess of the $100,000 statutory limit.
*344 In answering Plaintiffs’ petition on June 13, 2007, the PCF also asserted a cross-claim for indemnity and/or contribution against Abbott/Hospira and Richard Bre-land. Specifically, the PCF alleged that Abbott/Hospira and Breland were jointly, severally and solidarity liable for Plaintiffs’ injuries and damages, and denied any joint, several or solidary liability on behalf of the PCF. The PCF further alleged the Pump was unreasonably dangerous and/or defective at the time of its manufacture, and that it caused Plaintiffs’ damages, in whole or in part. As a result, the PCF alleged that in the event that the PCF was cast in judgment as a result of the allegedly defective pump manufactured by Abbott/Hospira, the PCF would be entitled to indemnity from Abbott/Hospira for the full extent of any such damages.
On August 31, 2007, the trial court signed a consent judgment which (1) approved the settlement between Plaintiffs and Ochsner for the statutory limit of $100,000 as an admission of liability under La. R.S. 40:1299.44(0; (2) authorized Plaintiffs to proceed against the PCF with their claim for damages in excess of $100,000; and (3) reserved the PCF’s rights to contest Plaintiffs’ claims for excess damages.
| fiDuring a January 25, 2012 status conference, the parties agreed to set the matter for trial on August 6, 2012. Subsequently, on May 4, 2012, Plaintiffs, Abbott/Hospira and Richard Breland filed a joint motion to dismiss Plaintiffs’ claims against Abbott/Hospira and Breland with prejudice due to a confidential settlement between the parties. Accordingly, the trial court issued an order on May 7, 2012, dismissing Plaintiffs’ claims against Abbott/Hospira and Breland with prejudice, but reserving Plaintiffs’ claims against Ochsner, as a nominal defendant, and against the PCF.
On the following day, Plaintiffs filed a motion to strike the PCF’s cross-claim for indemnity against Abbott/Hospira. In their motion to strike, Plaintiffs asserted that the PCF is prohibited from maintaining a claim for indemnity against Abbott/Hospira because as joint tortfeasors, Abbott/Hospira and the PCF would only be held liable for their respective portions of fault under the comparative fault principles of La. C.C. 2323. In opposition to Plaintiffs’ motion, the PCF asserted that it was entitled to seek statutory indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) of the LMMA. Specifically, the PCF argued that under La. R.S. 40:1299.44(D)(2)(b)(xi), the PCF has the right to seek indemnity from any party that is not a qualified health care provider, for damages assessed against the PCF that are attributable to the fault of that non-health care provider party.
On June 22, 2012, the trial court held a hearing on Plaintiffs’ motion to strike. At the hearing, the PCF argued that in addition to the statutory indemnity provided in La. R.S. 40:1299.44(D)(2)(b)(xi), the lease agreement between Ochsner and Abbott/Hospira regarding the Plum XL3 pumps, provided a warranty that the pumps conform to Abbott/Hospira’s standard specifications and are free of defects. Because the PCF argued that it stands in the shoes of Ochsner, it claimed that the 17warranty provision of the lease agreement also provides the PCF with the right to seek indemnity for any damages that may be assessed against it as a result of Abbott/Hospira’s defective pump. At the conclusion of the hearing, the trial court denied Plaintiffs’ motion to strike.
Approximately one week later, on July 2, 2012, Plaintiffs again attempted to remove the PCF’s cross-claim for indemnity from the trial of their main demand by filing a motion to sever the PCF’s cross- *345 claim. In their motion, Plaintiffs contended that requiring the jury to determine the merits of the PCF’s cross-claim for indemnity in addition to the merits of Plaintiffs’ main demand, would lead to confusion and unduly lengthen the trial, given the complex nature of the PCF’s claim for statutory and/or contractual indemnity. Conversely, the PCF opposed Plaintiffs’ motion to sever, arguing that its cross-claim will not prolong the trial or confuse the jury because the determination of both the cross-claim and the main demand will involve the same witnesses and evidence. Rather, the PCF suggested that the trial court should approach the PCF’s cross-claim for indemnity by including additional jury charges and interrogatories concerning the cross-claim.
After the trial court denied Plaintiffs’ motion to sever, Plaintiffs filed a motion in limine on August 3, 2012, which sought to preclude the PCF from introducing any evidence related to its cross-claim based upon the same grounds raised in their motion to strike and in their motion to sever. On the morning of trial on August 6, 2012, the trial court ruled that it would not hear Plaintiffs’ motion in limine because it was untimely under the pre-trial order. However, the trial court noted that if it did hear the motion, its ruling would be to deny the motion given that the court had previously denied the same claims twice — first as a motion to strike and second as a motion to sever.
Is At trial, Plaintiffs proceeded against Ochsner, as the nominal defendant, and against the PCF as the only remaining defendant to the main demand. Plaintiffs sought to establish that the PCF was responsible for Plaintiffs’ damages in excess of the $100,000 statutory limit because Nurse McKearnan breached the applicable nursing standard of care by failing to employ any of the additional safeguards to ensure that the flow of epinephrine was discontinued. Plaintiffs introduced evidence that these additional safeguards consisted of (1) manually pressing the Pump’s flow regulator; (2) clamping the I.V. tubing with a plastic clamp; (3) disconnecting the I.V. tubing from the child; or (4) observing the flow by looking at the drip chamber. Plaintiffs further claimed that the PCF should be held liable because the manner in which Ochsner transported and stored the pumps led to a high incidence of broken doors, which Plaintiffs alleged caused the broken door of the Pump used in this incident.
Because Plaintiffs settled with Abbott/Hospira prior to trial, the PCF bore the burden at trial to prove that Abbott/Hospira was responsible for Plaintiffs’ damages because the Pump was unreasonably dangerous under the LPLA. Accordingly, the PCF sought to establish that the Pump was unreasonably dangerous at the time of its manufacture due to its failure to automatically stop the flow of epinephrine when Nurse McKearnan removed the cassette from the Pump, in accordance with the Pump’s anti-free-flow protection. Although Abbott/Hospira and Breland remained defendants to the PCF’s cross-claim, they did not make an appearance at trial in defense of the cross-claim.[1]
At the close of the evidence, Plaintiffs moved for a directed verdict as to the PCF’s cross-claim for indemnity, contending that only comparative fault should be | aapplicable. The trial court again denied Plaintiffs’ motion on this issue. The PCF filed its own motion for a directed verdict, contending that the Pump was unreason *346 ably dangerous under the products liability act, which the trial court also denied. The trial court charged the jury and dismissed the jury for deliberations.
On August 10, 2012, the jury returned with a unanimous verdict finding that Ochsner caused damages to Ty’Kevion in excess of $100,000, and that Abbott/Hospi-ra’s Pump was unreasonably dangerous in all four aspects of the LPLA — (1) defective design; (2) failure to provide an adequate warning; (3) failure to conform to the express warranty of manufacturer; and (4) dangerous construction or composition. As a result, the jury apportioned fault as follows: 35% of fault to the PCF; 65% of fault to Abbott/Hospira; and 0% of fault to Richard Breland. The jury awarded Plaintiffs damages in the amount of $24,227,916, which included the following:
$208,000 Past and Present Medical Expenses
$600,000 Past and Present Custodial Care
$20,000,000 Future Medical Expenses
$919,916 Loss of Earning Capacity
$1,000,000 Past Present and Future Pain and Suffering
$1,000,000 Loss of Enjoyment of Life
$500,000 Loss of Consortium for Mother
The jury’s verdict also included a finding that Abbott/Hospira breached the warranty provisions of its contract with Ochsner regarding the Pump’s protection from free-flow, and awarded Ochsner and the PCF $400.00.
On November 27, 2012, the trial court rendered a judgment reducing Plaintiffs’ award against the PCF in accordance with its 35% fault allocation, and in accordance with the $500,000 general damages cap provided in the LMMA. Accordingly, the trial court reduced Plaintiffs’ general damages award against the |10PCF to $400,000, in light of Ochsner’s prior payment to Plaintiffs of $100,000 in settlement. The trial court further reduced Plaintiffs’ judgment against the PCF for past medical expenses and past custodial care to 35% of the total amount, which amounted to $34, 447.71 and $210,000.00, respectively. For future medical expenses, the judgment ordered the PCF to pay 35% of Ty’Kevion’s future medical expenses and related benefits, as incurred, with a cap of $7,000,000. The judgment also awarded the PCF $400.00 on its cross-claim against Abbott/Hospira, “including any claim for indemnity.” The judgment ordered the PCF to pay all costs of the proceedings.
On December 7, 2012, the PCF filed a “Motion for J.N.O.V and/or New Trial and for Additur and Remittitur and/or to Amend Judgment.” In its motion, the PCF raised four issues regarding: (1) the PCF’s cross-claim for indemnity; (2) the jury’s apportionment of fault; (3) the jury’s award for past custodial care; and (4) the trial court’s apportionment of costs. On December 10, 2012, the trial court denied the PCF’s “Motion for J.N.O.V. and/or New Trial and for Additur and Remittitur and/or to Amend Judgment.” Subsequently, the PCF, Plaintiffs, and Abbott/Hospira [2] have each filed separate appeals in this matter.
ASSIGNMENTS OF ERROR
On appeal, the PCF alleges the following assignments of error:
*347 1. The trial court erred in denying the PCF’s motion for Judgment Notwithstanding the Verdict (“JNOV”) when it failed to award damages on the PCF’s cross-claim for indemnity against Abbott/Hospira in accordance with La. R.S. . 40:1299.44(D)(2)(b)(x) & (xi).
2. The trial court erred in denying the PCF’s motion for directed verdict as to whether the pump was unreasonably dangerous under the LPLA, and in denying the PCF’s motion for JNOV on the issue of fault allocation.
|n 3. The trial court erred in denying the PCF’s motion for JNOV as to whether Plaintiffs’ award for past custodial care exceeds the rate permitted by the Administrative Code.
4. The trial court erred in ordering the PCF to pay all costs of the proceedings, where the PCF was only found to be 35% at fault.
5. The trial court erred in granting Abboti/Hospira’s motion for appeal, where Abbott/Hospira failed to appear at trial.
In their appeal, Plaintiffs allege the following assignments of error:
1. The trial court erred in refusing to strike the PCF’s cross-claim for indemnity and/or contribution against Abbott/Hospira because the PCF has no legal right or cause of action for indemnity against Abbott/Hospi-ra.
2. The jury committed manifest error in apportioning fault at 65% to Abbott/Hospira, where it was shown that Ochsner broke the Pump and failed to utilize the multiple anti-free-flow safety protections provided by the manufacturer, and that Plaintiffs’ injuries were predominantly caused by the admitted negligence of Ochsner.
LAW AND DISCUSSION
Because both the PCF and Plaintiffs have raised issues related to the PCF’s cross-claim for indemnity under La. R.S. 40:1299.44(D)(2)(b)(xi) in their respective first assignments of error, we will address both parties’ first assignments of error concurrently.

The PCF’s Assignment of Error Number One

In its first assignment of error, the PCF contends that the trial court erred in failing to grant its motion for JNOV as it related to the PCF’s cross-claim for indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) against Abbott/Hospira. The PCF asserts that the jury was confused as to the concept of statutory indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) versus the concept of “contractual indemnity/express warranty,” which arose out of the lease agreement between Ochsner and Abbott/Hospira, and that the PCF should have been awarded indemnity pursuant to La. R.S. 40:1299.44(D)(2)(b)(x)-(xi). As a result, the PCF raises the question of whether its indemnity claim should have been submitted to |iathe jury at trial, and asserts that its indemnity claim would have been more appropriately handled by the trial court post-trial, just as the trial court reduced Plaintiffs’ damages award against the PCF in proportion to the jury’s fault apportionment post-trial.
We begin by reviewing the PCF’s motion for JNOV regarding its indemnity claim under R.S. 40:1299.44(D)(2)(b)(x)-(xi). In Stoll v. Allstate Ins. Co., 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089, 1095, citing Joseph v. Broussard Rice Mill, Inc., 00-0628 (La.10/30/00), 772 So.2d 94, 99, this Court held:
*348 JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
In support of its motion for JNOV, the PCF reiterated that the trial court denied Plaintiffs’ numerous attempts to strike the PCF’s indemnity claim under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi); specifically, when the court denied Plaintiffs’ motion to strike, their motion to sever, and their motion for directed verdict. Despite the trial court’s rulings on this issue in favor of the PCF, the PCF alleged that the trial court erroneously excluded its proposed indemnity charge, as well as a jury interrogatory regarding the same, from the jury’s consideration, over the PCF’s objection. While we agree that the record shows that the trial court did not charge the jury on statutory indemnity under La. R.S. 40:1299.44(D)(2)(b)(xi) or on any other theory of indemnity, even though it previously denied Plaintiffs’ |1snumerous requests to strike the PCF’s indemnity claim, our review of the record shows that the PCF made no objections on the record to the exclusion of the indemnity issue from the jury charges and interrogatories.
With regard to the jury charges, the PCF submitted one charge on the issue of indemnity within its proposed jury charges, which provided as follows:
“A defendant who incurs liability because he is constructively at fault for the wrongdoing of another defendant who is actually at fault has an action for full indemnity over against that defendant. Thus if you found Defendants Abbott and Hospira responsible you may award fees and costs to Ochsner and the Patient’s Compensation Fund. Dusenbery v. McMoRan Exploration, Co., 458 So.2d 102 (La.1984).”
As an initial matter, we note that neither the PCF’s proposed indemnity charge, nor the case cited in support thereof, in any way refer to the statutory indemnity provision of La. R.S. 40:1299.44(D)(2)(b)(x)-(xi), which the PCF now urges this Court to apply on appeal. Nevertheless, our review of the record shows that this proposed charge, regardless of whether it includes the statutory indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi), was not given to the jury at trial, and that the PCF made no objection at trial to its exclusion.
Under La. C.C.P. art 1793, “[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection.” In order to preserve the right to appeal a trial court’s failure to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of the *349 objection. Busby v. St. Paul Ins. Co., 95-2128 (La.App. 1 Cir. 5/10/96), 673 So.2d 320, 328, writ denied, 96-1519 (La.9/20/96), 679 So.2d 443. This rule also applies to jury interrogatories. Hebert v. Old Republic Ins. Co., 01-355 (La.App. 5 Cir. 1/29/02), 807 So.2d 1114, 1127.
| uThe PCF’s claim that the jury was confused regarding the issue of indemnity has no merit. The PCF was given ample opportunity to review the jury charges and interrogatories, and to make any objections it felt necessary at the time. Here, the PCF made one objection on the record to the trial court’s failure to include a jury charge on the issue of offer and acceptance within the context of contract principles, but failed to make a similar objection regarding the exclusion of its proposed indemnity charge. With respect to the jury interrogatories, the trial judge specifically asked counsel for the PCF whether she had any objections to the jury interrogatories, to which she replied, “No, sir,” knowing that neither the charges to be read to the jury, nor the jury interrogatories, included the word “indemnity.”
The PCF is prohibited from coming to this Court after the jury verdict has been rendered and arguing, that the jury charges or interrogatories regarding indemnity were unclear or confusing, where it failed to make any such objection at trial. Because the PCF failed to timely object to the jury charges or to the interrogatories at trial, we find that it is precluded from making such a claim on appeal. See Parker v. Centenary Heritage Manor Nursing Home, 28,401 (La.App. 2 Cir. 6/26/96), 677 So.2d 568, writ denied, 96-1960 (La.11/1/96), 681 So.2d 1271; Stoll, supra at 1095. However, because Plaintiffs have preserved the issue regarding the PCF’s cross-claim for indemnity for appeal, we will address the indemnity issue in connection with Plaintiffs’ assignment of error regarding the same.
For the same reasons, we find the PCF’s argument that its indemnity cross-claim would have been more appropriately handled by the trial court in a post-trial motion, as opposed to the jury, to be without merit. As we have shown above, Plaintiffs made at least four attempts to strike the indemnity cross-claim from the trial, one of which consisted of a motion to sever the indemnity claim from the trial 11Bon the main demand. At no point throughout any of Plaintiffs’ attempts, or throughout the trial itself, did the PCF indicate a desire to submit its indemnity cross-claim to the trial court for determination, as opposed to the jury. Instead, the record shows that the PCF opposed Plaintiffs’ motion to sever the indemnity cross-claim, specifically stating that its indemnity claim should go to the jury because its determination would involve the same witnesses and evidence as that of the main demand. Accordingly, the PCF cannot now argue, after the jury has rendered its verdict and after the PCF opposed Plaintiffs’ request to sever the indemnity claim, that this issue should have been determined by the trial judge.
■ Therefore, we find no error in the trial court’s denial of the PCF’s motion for JNOV as to its cross-claim for indemnity.
However, our inquiry into the PCF’s cross-claim for indemnity does not end here. Even though we have found that the jury was not given a charge on the issue of indemnity, our review of the trial court’s November 27, 2012 judgment shows that it nevertheless awarded a judgment in favor of the PCF on its cross-claim, “including any claim for indemnity” in the amount of $400.00. It is this award in the judgment that Plaintiffs challenge in their first assignment of error. Specifically, Plaintiffs contend that the trial court *350 erred in allowing the jury to consider the PCF’s cross-claim for indemnity, where the PCF has no right to seek statutory indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) or contractual indemnity. To fully reconcile the PCF’s $400.00 award for indemnity provided in the judgment, with our determination that the jury was not charged on the issue of indemnity, we must first determine whether the PCF has a right to seek indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi), as challenged in Plaintiffs’ first assignment of error. Following that determination, we will review the jury charges and interrogatories which gave rise to the indemnity award in the judgment.
| plaintiffs’ Assignment of Error Number One

The■ PCF’s cross-claim for indemnity under La. R.S. 40:129941(D) (2) (b)(x)-(xi):

Plaintiffs contend that the trial court erred in refusing to strike the PCF’s cross-claim for indemnity under La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) because that statute is not applicable where the PCF’s liability has been reduced under the provisions of comparative fault set forth in La. C.C. art. 2323. The PCF’s cross-claim arises out of the statutory indemnity set forth in La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) of the LMMA. La. R.S. 40:1299.44(D)(2)(b)(x) provides, in pertinent part, as follows:
The [Patient’s Compensation Fund Oversight Board] shall have the authority to ... [d]efend the fund from all claims due wholly or in part to the negligence or liability of anyone other than a qualified health care provider regardless of whether the qualified health care provider has settled and paid its statutory maximum or has been adjudged liable or negligent.
The next section, La. R.S. 40:1299.44(D)(2)(b)(xi), provides as follows:
The [Patient’s Compensation Fund Oversight Board] shall have the authority to ... [d]efend the fund from all claims arising under R.S. 40:1299.44(D)(2)(b)(x) and obtain indemnity and reimbursement to the fund of all amounts for which anyone other than a qualified health care provider may be held liable. The right of indemnity and reimbursement to the fund shall be limited to that amount that the fund may be cast in judgment. (Emphasis added).
In this case, Plaintiffs argue that La. R.S. 40:1299.44(D)(2)(b)(xi) (hereinafter, “the indemnity statute”) is only applicable where the PCF is actually held liable for damages that are attributable to a non-qualified health care provider party, such as Abbott/Hospira. Plaintiffs contend that because the PCF sought and received a reduction of its percentage of liability under the comparative fault principles of La. C.C. art. 2323, the trial court’s refusal to strike the PCF’s claim for indemnity against Abbott/Hospira improperly allowed the PCF to obtain a further reduction of its liability.
|17Conversely, the PCF contends that the indemnity statute provides the PCF with the right to seek indemnity from any party that is not a qualified health care provider, for any and all damages assessed against the PCF where that non-health care provider party is found to be at fault. Specifically, the PCF claims that because the jury found that Abbott/Hospira’s pump was unreasonably dangerous, and that it in fact injured the child in this case, the indemnity statute provides the PCF with the right to receive indemnity from Ab-boti/Hospira for the full amount of damages cast against the PCF in the judgment.
*351 Under the PCF’s interpretation of the indemnity statute, after the jury made its comparative fault allocation of 35% of the fault to the PCF and 65% of the fault to Abbott/Hospira, the indemnity statute would require Abbott/Hospira to indemnify the PCF for its 35% portion of the damages awarded to Plaintiffs. We disagree with the PCF’s interpretation of the indemnity statute.
It is well established that the starting point for the interpretation of any statute is the language of the statute itself. Foti v. Holliday, 09-0093 (La.10/30/09), 27 So.3d 813, 817. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written and no further interpretation may be made in search of legislative intent. Id. citing La. C.C. art. 9. In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law. La. C.C. art. 10. Further, the Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. ABL Mgmt., Inc. v. Bd. of Sup’rs of S. Urdu, 00-0798 (La.11/28/00), 773 So.2d 131, 135. We now apply these principles to address whether the indemnity statute is applicable where the PCF’s percentage of fault has been reduced under the provisions of comparative fault set forth in La. C.C. art. 2323.
118Under La. C.C. art. 2323, the fault of every person responsible for a plaintiffs injuries must be compared and allocated in proportion to the percentage of fault attributable to each person, whether or not each person is a party and regardless of the legal theory of liability asserted.[3] La. C.C. art. 2323. In Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, 02-0563 (La.10/15/02), 828 So.2d 530, 537, the Louisiana Supreme Court held that “[t]he comparative fault article, La. C.C. art. 2323, makes no exceptions for liability based on medical malpractice; on the contrary, it clearly applies to any claim asserted under any theory of liability, regardless of the basis of liability.” (Emphasis added).
In Act 800 of the regular session in 1991, the legislature clarified the theory of comparative fault within the LMMA by enacting La. R.S. 40:1299(D)(2)(b)(x), which authorizes the PCF to defend itself from “all claims due wholly or in part to the negligence or liability of anyone other than a qualified health care provider,” regardless of whether the qualified health care provider has settled and paid the statutory maximum.[4] At the same time, the legisla *352 ture also enacted La. R.S. 40:1299(D)(2)(b)(xi), the indemnity statute, which authorizes the PCF to “obtain indemnity and reimbursement to the fund of all amounts for which anyone other 11flthan a qualified health care provider may be held liable,” up to the amount that the PCF may be cast in judgment.
A plain reading of La. R.S. 40:1299.44(D)(2)(b)(xi) establishes that the PCF’s claim for indemnity is limited in two respects. First, it is limited with respect to the party against whom indemnity can be sought — “anyone other than a qualified health care provider.” /¿.(emphasis added). Second, it is limited as to the amount for which the PCF can be indemnified— “all amounts for which anyone other than a qualified health care provider may be held liable,” which “shall be limited to that amount that the fund may be cast in judgment” Id. (emphasis added). When applied to the parties in the instant case, the indemnity statute would authorize the PCF to obtain indemnity from Abbott/Hospira for any amounts assessed against the PCF in the trial court’s judgment that are attributable to the liability of Abbott/Hospira. However, because the jury apportioned the individual fault of the PCF and of Abbott/Hospira under La. C.C. art. 2328, the judgment clearly does not cast the PCF in judgment for any amounts attributable to the liability of Abbott/Hospira. Rather, the judgment casts the PCF in judgment only for amounts proportionate to its percentage of fault for medical malpractice in this case, which the jury concluded consisted of 35% of Plaintiffs’ total damages. Thus, we find the indemnity statute has no application to this case.
We find the Third Circuit’s opinion in Griggs v. Riverland Med. Ctr., 98-256 (La. App. 3 Cir. 10/14/98), 722 So.2d 15, writ denied, 99-0385 (La.5/28/99), 735 So.2d 622, abrogated on other grounds by Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, to be instructive on this issue. In Griggs, the plaintiff filed a medical malpractice action resulting from the death of her husband after being struck in the head with a flashlight by a police officer. The plaintiff settled her claims against the police officer at fault and | ^against the city that employed the officer (hereinafter, “municipal defendants”). On appeal, the PCF assigned as error the trial court’s refusal to allow the PCF to file a third party demand for contribution and/or indemnity against the municipal defendants. The Third Circuit, relying upon its previous writ denial on the same issue, concluded that the trial court did not err in refusing to allow the PCF to file its claim for indemnity because, by virtue of the plaintiffs settlement with the municipal defendants, the PCF is relegated to the right of a pro rata reduction of any judgment against it by asserting the comparative fault of the municipal defendants. Id. at 21-24. Therefore, the court affirmed the trial court’s refusal to allow the PCF to file a claim for indemnity against the municipal defendants, but reversed the trial court’s decision to limit the trial solely to the issue of damages because that decision improperly denied the PCF’s right to present evidence of the municipal defendants’ comparative fault. Id.
In Hall v. Brookshire Bros., Ltd., 02-2404 (La.6/27/03), 848 So.2d 559, 568, the Louisiana Supreme Court emphasized that certain provisions of the LMMA make it clear that the legislature intends to hold the PCF liable only for acts constituting medical malpractice. Specifically, La. R.S. 40:1299.41(1) provides “[njothing in this Part shall be construed to make the pa *353 tient’s compensation fund liable for any sums except for those arising from medical malpractice.” The Court in Hall also cited La. R.S. 40:1299.44(D)(2)(b)(x), noting that “[t]hese provisions evidence an intent by the legislature that the [PCF] be able to limit its liability by demonstrating that the negligence or liability of another caused the plaintiffs damages.” Hall, supra at 568. Where the qualified health care provider or its insurer has settled a medical malpractice claim for the statutory limit of $100,000, the LMMA expressly provides that the liability of the QHCP is deemed “admitted and established.” Bijou v. Alton Ochsner Med. Found., 95-3074 21(La.9/5/96); 679 So.2d 893, 896; La. R.S. 40:1299.44(C)(5)(e). Once' payment of $100,000 by the qualified health care provider to a medical malpractice victim has occurred, the only contested issue remaining thereafter between the victim and the Patient’s Compensation Fund is the amount of the victim’s damages in excess of the amount already paid. McCrory v. Jefferson Parish Hosp. Serv. Dist. No. 2, 96-624 (La.App. 5 Cir. 12/30/96); 686 So.2d 1060, 1063 (citing Stuka v. Fleming, 561 So.2d 1371, 1374 (La.1990)).
In this case, Ochsner, as the qualified health care provider, settled Plaintiffs’ claims for the $100,000 statutory limit pri- or to trial. At trial against the PCF, Plaintiffs had the burden of proving that the admitted malpractice of Ochsner caused damages in excess of $100,000. At the conclusion of trial, the jury found, under a comparative fault analysis, that the PCF was 35% at fault and Abbott/Hospira was 65% at fault and awarded Plaintiffs damages. Subsequently, the trial court rendered a judgment on November 27, 2012, reducing the damages awarded against the PCF in proportion to the jury’s 35% fault allocation against the PCF. As a result, we find that the PCF has only been cast in judgment for an amount proportionate to the PCF’s percentage of fault, and therefore, the indemnity provision of La. R.S. 40:1299.44(D)(2)(b)(xi) is not applicable.
The PCF’s interpretation of the indemnity statute would lead to an absurd result. That interpretation would allow the PCF to first ask the jury to apply the comparative fault provisions to limit the PCF’s responsibility for Plaintiffs’ damages to an amount proportionate to its respective percentage of fault for medical malpractice, and then receive indemnity from Abbott/Hospira for the PCF’s percentage of fault for medical malpractice. To give effect to this interpretation of the indemnity statute would be to give the PCF the right to seek indemnity for its percentage of judicially-determined fault for medical malpractice | a2from any non-qualified health care provider also found to be at fault, regardless of whether the jury has already apportioned the PCF’s liability solely to acts constituting medical malpractice under comparative fault. Such a result is unreasonable and not supported by the law, as it would allow the PCF to escape its liability for medical malpractice damages in excess of $100,000. See La. R.S. 40:1299.42(B)(3)(a).
Contrary to the PCF’s contention, we find that when a verdict is reduced by comparative fault, there is no risk that the PCF will pay damages that the jury has determined were caused by a non-qualified health care provider, such as Abbott/Hospira. As long as a comparative fault reduction is applied to the verdict, the purpose of La. R.S. 40:1299.41(1) remains intact because the PCF will only be held liable for acts constituting medical malpractice. Accordingly, where a comparative fault reduction is applied to a damage award in a medical malpractice action, the PCF has no basis for a claim *354 for .indemnity under La. R.S. 40:1299.44(D)(2)(b)(xi) because the PCF will not be cast in judgment for an amount attributable to the liability of “anyone other than a qualified health care provider,” as contemplated by the indemnity statute. See La. R.S. 40:1299.44(D)(2)(b)(xi). In such cases, the PCF will only be cast in judgment for amounts arising from medical malpractice, in accordance with La. R.S. 40:1299.41(1).
Therefore, we find that the trial court erred by refusing to strike the PCF’s indemnity claim against Abbott/Hospira under La. R.S. 40:1299.44(D)(2)(b)(xi) where the PCF sought and received a reduction of its liability for damages under the comparative fault principles of La. C.C. art. 2323.

lasJury charges and interrogatories regarding the PCF’s $4,00.00 award of indemnity in the judgment:

As mentioned earlier, our review of the trial court’s November 27, 2012 judgment shows that it awards a judgment in favor of the PCF on its cross-claim for indemnity against Abbott/Hospira in the amount of $400.00, despite the fact that the jury was not charged on indemnity, or given an interrogatory referencing the PCF’s cross-claim for indemnity. As set forth above, the PCF submitted one proposed jury charge on the issue of indemnity, which was excluded from the final charges and the PCF did not object to its exclusion. As a result, there was no mention of indemnity in the final jury charges. Although the final charges include a heading titled, “CONTRACTUAL INDEMNITY CLAIM,” the charges that follow that heading do not discuss the issue of contractual indemnity, but instead, discuss the general principles of contract interpretation.
A review of the jury interrogatories similarly reveals that the word “indemnity” does not appear within the interrogatories, and that the PCF failed to make any objections to the interrogatories. However, the jury interrogatories do include the following relevant provisions:
9. Did Abbott/Hospira fail to meet the warranty provisions of their contract with Ochsner Hospital regarding protection from freeflow?
10. What amount, if any, would compensate Ochsner and the Louisiana Patient’s Compensation Fund for Abbott/Hospira’s violation of their product’s failure to abide by the specification?
In response to interrogatory number nine, the jury responded affirmatively. In response to interrogatory number ten, the jury provided the amount of $400.00. These findings appear in the trial court’s judgment as follows:
Finally, with regard to the Louisiana Patient’s Compensation Fund and/or the Louisiana Patient’s Compensation Fund Oversight Board’s cross-claims, including any claim for indemnity;
\9AIT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the Louisiana Patient’s Compensation Fund and/or the Louisiana Patient’s Compensation Fund Oversight Board, and against cross-defendant, in the total amount of four hundred ($400.00) dollars, with interest thereon from date of filing of the cross-claims.
Our review shows that this award in the judgment was made in error. Because it is clear that neither the jury charges, nor jury interrogatories numbers nine or ten ask the jury to resolve the PCF’s cross-claim for indemnity against Abbott/Hospi-ra, the PCF’s award for “indemnity” provided in the judgment is not supported by the jury’s verdict. However, our review of *355 the jury charges, jury interrogatories and trial testimony reveals that the trial court did allow the PCF to-essentially submit to the jury a contractual warranty claim against Abbott/Hospira, arising out of Ochsne'r’s lease agreement/contract with Abbott/Hospira regarding the Pump.
At trial, the PCF called David Ferrara, a contract director at Ochsner, to the stand, and he testified that under the warranty provided in the contract between Abbott/Hospira and Ochsner, Abbott/Hos-pira is required to repair or replace any damaged pumps within Ochsner’s possession, provided that Ochsner did not cause the damage. The PCF also introduced the deposition testimony of Dr. David Yadin, who testified that the cost to repair a broken door on a pump is $400.00. Notably, the record shows that the contract at issue was not offered into, evidence at trial. Despite the absence of the actual contract in evidence, the testimony establishes that the parties to the contract were Ochsner and Abbott/Hospira — not the PCF.
In Harrison v. Smith, 02-477 (La.App. 5 Cir. 11/26/02), 832 So.2d 1064, writ denied, 03-0880 (La.6/27/03), 847 So.2d 1277, the PCF argued the enforceability of a specific provision within the settlement agreement between the | ^plaintiff and the defendant-health care provider under La. R.S. 40:1299.44(C)(5). The settlement agreement at issue incorporated a provision which stated that the defendant’s payment of $100,000 to the plaintiff was not to be considered an admission of liability. On appeal, the PCF claimed that the effect of that provision within the settlement agreement was binding on the parties such that the PCF should have been allowed to contest the liability of the defendant at trial. In response, this Court emphasized that the status of the PCF after a settlement between the malpractice victim and a health care provider for $100,000, is “more in the nature of a statutory intervenor than a defendant.” Id. at 1069, citing Stuka v. Fleming, 561 So.2d 1371, 1374 (La.1990). “The PCF does not stand in the shoes of the Defendant. It is a creature of the legislature created solely to pay the excess damages to an injured plaintiff who can prove that his excess damages were caused by the health care provider’s malpractice.” Id., citing McGrath v. Excel Home Care, Inc., 01-1270 (La.App. 5 Cir. 3/26/02), 810 So.2d 1283, 1288, writ denied, 02-1344 (La.11/27/02), 831 So.2d 284. Thus, we held that the settlement agreement, insofar as it purported to negate the admission of liability of the defendant under La. R.S. 40:1299.44(0(5), could not alter the legislatively created status of the PCF. Id. Importantly, we noted that even if the settlement agreement was binding on the parties as alleged by the PCF, “the PCF was not a party to the compromise.” Id. at 1070.
Similarly, the PCF in this case is not a party to the contract between Ochs-ner and Abbott/Hospira. The PCF is more in the nature of a statutory interve-nor than a defendant, and it does not stand in the shoes of Ochsner with regard to its contract with Abbott/Hospira. Here, the PCF did not contract with Abbott/Hospira to procure a warranty for the repair or replacement of a pump in the event that it became damaged — Ochsner did. To allow the PCF to recover under a contractual | ¡^warranty claim arising out of a contract to which it is not a party, would enlarge the legislatively created status of the PCF. In addition, it could allow the PCF to receive a windfall from contracts entered into by health care providers and third parties, such as Abbott/Hospira. Therefore, we find that the trial court erred in allowing the PCF to assert a contractual warranty claim against Abbott/Hospira, based upon a contract solely between *356 Ochsner and Abbott/Hospira. Accordingly, we reverse and vacate the award in the judgment rendered in favor of the PCF and against Abbott/Hospira in the amount of $400.00.

The PCF’s and Plaintiffs’ Assignments of Error Number Two

In its second assignment of error, the PCF contends that the trial court erred in failing to grant its motion for directed verdict as to whether the Pump was unreasonably dangerous under the LPLA, and in failing to grant its JNOV as to the jury’s fault allocation of 35% of fault to the PCF and 65% of fault to Abbott/Hospira. In their second assignment of error, Plaintiffs also contend that the jury committed manifest error in allocating fault at 65% to Abbott/Hospira, and only 35% to the PCF.

The PCF’s Motion for Directed Verdict:

A party who moves for a directed verdict is entitled to a directed verdict when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant’s opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary verdict. Conrad v. Doe, 95-518 (La.App. 5 Cir. 11/28/95), 665 So.2d 542, 545-46, writ denied, 95-3092 (La.2/16/96), 667 So.2d 1058. However, if there is evidence produced in opposition to the motion that has such quality and weight that reasonable and fair-minded men exercising impartial judgment might reach different conclusions, then the motion | ^should be denied and the case should be submitted to the jury. Id. at 546. The trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Id. In reviewing the granting or denial of a motion for directed verdict, the appellate court applies the standard of whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. Id. In addition, the appellate court evaluates the propriety of a directed verdict in light of the substantive law related to the claims. Id.
Under the LPLA, liability may be imposed on a manufacturer when a product is found to be unreasonably dangerous in at least one of four ways: (a) defective construction or composition, (b) defective design, (c) inadequate warning, or (d) failure to conform to an express warranty. Jack v. Alberto-Culver USA, Inc., 06-1883 (La.2/22/07), 949 So.2d 1256, 1258, citing La. R.S. 9:2800.54(B). The plaintiff bears the burden of proving whether a product is unreasonably dangerous. Id. However, in this case, Plaintiffs settled with the manufacturer, Abbott/Hospira, prior to trial, and proceeded against the PCF alone at trial. Therefore, the burden was on the PCF to prove that the Pump was unreasonably dangerous as set forth in the LPLA.
After the close of all evidence on August 9, 2012, the PCF moved for a directed verdict as to whether the Pump was unreasonably dangerous under the LPLA. The PCF asserted that Plaintiffs failed to introduce any evidence in opposition to the PCF’s evidence that the Pump was unreasonably dangerous insofar as it was defectively designed, failed to adequately warn, and breached the express warranty. The trial court denied the motion, finding that there was sufficient evidence in opposition to the motion such that the issue should go to the jury for its determination.
| j>8We find no error in the trial court’s denial of the PCF’s motion for directed verdict. The record shows that Plaintiffs produced sufficient evidence in opposition to the PCF’s claim that the Pump was *357 unreasonably dangerous, such that the trial court properly denied the PCF’s motion and submitted the issue to the jury. Furthermore, we note that despite the trial court’s denial of the PCF’s motion for directed verdict, the jury still found in favor of the PCF on the issue set forth in its motion for directed verdict. The jury concluded that the Pump was unreasonably dangerous in all four aspects of La. R.S. 9:2800.54(B) — (1) defective design; (2) failure to provide an adequate warning; (3) failure to conform to express warranty of manufacturer; and (4) dangerous construction or composition. Therefore, the trial court’s refusal to grant the PCF’s motion for directed verdict on the unreasonably dangerous nature of the Pump did not result in prejudice to the PCF on this issue. We find this claim to be without merit.

Allocation of fault:

Both the PCF and Plaintiffs contest the jury’s allocation of fault in this case of 65% to Abbott/Hospira and 35% to the PCF. Plaintiffs contend that the jury erred in failing to allocate at least 70% of fault to the PCF, and the PCF contends that the trial court erred in failing to grant its motion for JNOV and assess at least 80% of fault to Abbott/Hospira.
Like all factual findings, the trier of fact is owed great deference in its allocation of fault and its findings may not be reversed unless clearly wrong or manifestly erroneous. Ruttley v. Lee, 99-1130 (La.App. 5 Cir. 5/17/00), 761 So.2d 777, 787, writ denied, 00-1781 (La.9/22/00), 768 So.2d 1287, citing Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 609-10. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses | ^and evidence. Id. It is the appellate court’s duty to give deference to the trier of fact. Ruttley, supra. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. Duncan v. Kansas City S. Ry. Co., 00-0066 (La.10/30/00), 773 So.2d 670, 680-81.
An appellate court’s determination of whether the trier of fact was clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), including: 1) whether the conduct was inadvertent or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actors, and 5) any extenuating factors which might require the actor to proceed with haste, without proper thought. Duncan, supra; Davis v. Vosbein, 12-626 (La.App. 5 Cir. 5/16/13), 119 So.3d 100, 102.
Applying these factors to the instant case, we address whether the jury’s allocation of fault was manifestly erroneous. In this case, the jury was presented with evidence that Abbott/Hospira designed and marketed the Pump as having anti-free-flow protection, and that its product materials for the Pump provided that removing the cassette from the pump automatically prevents all free-flow of medication. The jury also heard testimony from several witnesses that on the day of the incident, the Pump failed to automatically stop the free-flow of epinephrine into the child when Nurse McKearnan removed the cassette from the Pump because the door roller in channel C of the Pump was broken. Expert testimony from Dr. Tar-ald Kvalseth and Dr. David Yadin estab *358 lished that the Pump was unreasonably dangerous. Specifically, Dr. Kvalseth testified that Abbott/Hospira lanshould have warned users to always clamp the I.V. line with a plastic clamp, instead of solely relying on the automatic anti-free-flow safety feature.
Plaintiffs introduced testimony from Richard Breland that during his time as Abbott/Hospira’s field technician, he repaired approximately three hundred broken door rollers on pumps within Ochs-ner’s possession. Breland testified that he witnessed Ochsner transport the pumps by “daisy-chaining,” which means that the pumps were hooked together while mounted on I.V. poles and rolled to different departments within the hospital. Breland explained that daisy-chaining was dangerous because the pumps can be damaged by striking other objects. However, Breland testified that he had no knowledge as to whether Ochsner daisy-chained all of its pumps, and he specifically stated that he had no knowledge as to whether Ochsner daisy-chained the Pump actually used on Plaintiff.
Plaintiffs also introduced testimony regarding Nurse McKearnan’s failure to employ additional safeguards to protect against the risk of free-flow. In addition to using the automatic anti-free-flow safety feature, Plaintiffs offered evidence establishing that Nurse McKearnan could have employed other methods of discontinuing the flow of medication, including manually pressing the flow regulator; clamping the I.V. tubing with a plastic clamp; or disconnecting the I.V. tubing from the child. Additionally, Plaintiffs showed that Nurse McKearnan could have observed the flow by merely looking at the drip chamber. Nurse McKearnan did not employ any of these additional safeguards on the day of the incident, and admitted that had she looked at the drip chamber, she would have noticed that the epinephrine was flowing into the child. Plaintiffs’ expert Nurse Pamela Anderson testified that the nursing standard of care requires nurses to discontinue medication by physically clamping the IV. line, and not relying solely on an automatic anti-free-flow safety feature.
| S1 After reviewing the evidence, we find that both parties have failed to show that the jury’s allocation of fault was manifestly erroneous or clearly wrong. The jury reviewed evidence and testimony from many witnesses, which it received firsthand, and allocated 65% of fault to Abboti/Hospira and 35% of fault to the PCF. We find that the jury’s allocation of fault is supported by the record. Therefore, we find no manifest error in the allocation of fault in this case.

The PCF’s Assignment of Error Number Three

The PCF contends that the trial court erred in denying its motion for JNOV regarding Plaintiffs’ award for past custodial care. Specifically, the PCF asserts that Plaintiffs failed to sustain their burden in proving reimbursement for past custodial care expenses because they failed to take into account the administrative scheme for reimbursement of custodial care provided in the Administrative Code. See LAC 37:111 Chapter 19 § 1917. Therefore, the PCF contends that the judgment awards Plaintiffs reimbursement for past custodial care in excess of what is permissible. We disagree.
The applicable provisions of the LMMA regarding claims for “future medical care and related benefits” that proceed to trial are found in La. R.S. 40:1299.43. La. R.S. 40:1299.43(A)(1) mandates that “[i]n all medical malpractice claims filed with the board which proceed to trial, the jury shall be given a special interrogatory asking if the patient is in need of future medical *359 care and related benefits that will be incurred after the date of the response to the special interrogatory, and the amount thereof.” The definition of “future medical care and related benefits” is contained in La. R.S. 40:1299.43(B)(1), which provides as follows:
(a) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the | a2provision of such services, incurred after the date of injury up to the date of the settlement, judgment, or arbitration award.
(b) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of injury that will be incurred after the date of the settlement, judgment, or arbitration award.
(Emphasis added.)
Accordingly, the term “future medical care and related benefits” includes not only those expenses incurred after the date of trial, but also those medical expenses incurred after the date of injury but before the date of trial. Maxwell v. Soileau, 561 So.2d 1378, 1390 (La.App. 2 Cir.1990), writ denied, 567 So.2d 1123 (La.1990), and writ denied, 567 So.2d 1124 (La.1990); Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, 1217.
With regard to future medical expenses and related benefits incurred after the injury but before the trial, a 2004 amendment to La. R.S. 40:1299.43(A)(4) clarifies that future medical expenses already incurred at the time of judgment shall be included in the money judgment and made executory. See Steen v. Prof'l Liab. Ins. Co. of Am., 06-1230 (La.App. 4 Cir. 6/27/07), 962 So.2d 470, 479, writ denied, 07-1570 (La.10/26/07), 966 So.2d 577, and writ denied, 07-1590 (La.10/26/07), 966 So.2d 578; LeRay v. Bartholomew, 03-1370 (La.App. 5 Cir. 3/30/04), 871 So.2d 492, legislatively overturned on other grounds; Watkins v. Lake Charles Mem’l Hosp., 04-355 (La.App. 3 Cir. 12/15/04), 896 So.2d 130, 136, n. 7, writ denied, 05-0145 (La.4/8/05), 898 So.2d 1279. The amendment provides as follows:
If the total amount is for the maximum amount recoverable, including the value of the future medical care and related benefits, the amount of future medical care and related benefits that will be incurred after the date of the response to the special interrogatory by the jury or the court’s finding shall be deducted from the total amount and shall be laapaid from the patient’s compensation fund as incurred and presented for payment. The remaining portion of the judgment, including the amount of future medical care and related benefits incurred up to the date of the response to the special interrogatory by the jury or the court’s finding shall be paid in accordance with R.S. I0:1299.H(A)(7) and R.S. I0:1299(B)(2)(a), (b), and (c).
(Emphasis added).
In Steen v. Prof'l Liab. Ins. Co. of Am., 06-1230 (La.App. 4 Cir. 6/27/07), 962 So.2d 470, 479, writ denied, 07-1570 (La.10/26/07), 966 So.2d 577, and writ denied, 07-1590 (La.10/26/07), 966 So.2d 578, the Fourth Circuit upheld an award for past medical expenses where the PCF failed to refute the amount of expenses presented by the plaintiffs at trial.
In this case, Plaintiffs submitted uncon-troverted evidence of past custodial care expenses in the amount of $909,428.00 to $1,169,408.00. Plaintiffs’ life care planning *360 expert, Dr. Cornelius Gorman, testified regarding the care provided by Ty’Kevion’s mother and grandmother. Dr. Gorman testified that $17.50 per hour is the current midpoint for custodial care in Louisiana. Plaintiffs also called Dr. Richard Thompson, an economist, who deducted periods of time from the overall calculation for custodial care based upon times when Ty’Kev-ion would not require care, such as when he is sleeping and when he would be in school. The jury was also shown a day in the life video, showing the level of care provided by Ty’Kevion’s mother throughout the day.
The PCF did not present any countervailing evidence to the jury regarding Plaintiffs’ past custodial care expenses. Nevertheless, the jury awarded $600,000 in past custodial care expenses, which the trial court subsequently reduced to an award of $210,000 against the PCF in accordance with the PCF’s 35% fault allocation. Therefore, the PCF had a fair opportunity at trial to contest the amount |a4of past custodial care requested by Plaintiffs, but failed to refute these expenses. See Steen, supra.
Moreover, we emphasize that the PCF failed to submit a jury charge to the trial court regarding the administrative reimbursement rate for past custodial care that it now urges this Court to apply on appeal, or to make an objection at trial to the jury charge regarding custodial care that was given to the jury. With regard to the issue of custodial care, the jury was given the following charge:
A claim for nursing care rendered gratuitously by non-professional family members is allowed under the Medical Malpractice Act. In order for a non-professional parent to make a claim for nursing services rendered, there must be a showing that there is a need for the services, the reasonableness of the fee must be established, and the extent and the duration must be proven. Each claim is assessed on a case by case basis and must be carefully scrutinized.
As we have stated earlier, under La. C.C.P. art 1793, “[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection.” Our review of the record shows that the trial court conducted a charge conference with the parties, wherein all parties were given the opportunity to make any objections to the jury charges that they felt necessary, and that the PCF made no objection at trial to the jury charge regarding the issue of custodial care.
Accordingly, we find that the jury properly made a determination of the amount owed for past custodial care based on the unrefuted evidence introduced at trial, which the trial court properly reduced to judgment against the PCF. We find this assignment of error to be without merit.
las The PCF’s Assignment of Error Number Four
In its fourth assignment of error, the PCF contends that the trial court abused its discretion in assessing 100% of the costs against the PCF, where the jury only allocated 35% of fault to the PCF. The PCF argues that • Abbott/Hospira should be assessed with 65% of the costs, and the PCF’s responsibility for costs should be reduced to 35%, in accordance with the each party’s apportionment of fault. La. C.C.P. art.1920 provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. *361 Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Under La. C.C.P. art.1920, the party cast in judgment is generally taxed with costs; however, the trial court has the discretion to assess costs of a suit in any equitable manner. Garlepied Transfer, Inc. v. Guaranty Bank and Trust Co., 94-549 (La.App. 5 Cir. 5/30/95), 656 So.2d 728, writ denied, 95-1638 (La.10/6/95), 661 So.2d 470. The trial court is afforded great discretion in awarding costs and an award of costs can only be reversed on appeal upon a showing of abuse of discretion. Id.
The PCF has failed to show that the trial court abused its discretion in its assessment of costs. The trial court was fully aware of the trial proceedings and the costs incurred and assessed the same in its discretion. Although Abbott/Hospira was found to be 65% at fault and the PCF was found to be 35% at fault, we do not find that the trial court abused its discretion in assessing all costs against the PCF, where the PCF was the only defendant to participate at trial. See Davis v. State, Dept. of Transp. and Dev., 94-308 (LaApp. 3 Cir. 12/7/94), 647 |36So.2d 552, 556, writ denied, 95-0034 (La.1/27/95), 649 So.2d 382. Therefore, we find no abuse of discretion in the trial court’s assessment of costs.

The PCF’s Assignment of Error Number Five

The PCF contends that the trial court erred in granting Abbott/Hospira’s motion for appeal, where Abbott/Hospira did not participate in the trial. The PCF has offered no legal basis for this contention, and instead claims that Abbott/Hospi-ra’s presence in this appeal is prejudicial to the PCF. In Delanzo v. ABC Corp., 572 So.2d 648, 650 (La.App. 5 Cir.1990), this Court held:
Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. La. C.C.P. art. 2082. The sole object of an appeal is to give an aggrieved party to a suit recourse to a superior tribunal for the correction of a judgment of an inferior court. Any party, or person who could have intervened in the trial court, who is aggrieved by a trial court judgment has the right to appeal that judgment unless he has acquiesced therein, or is otherwise deprived of that remedy. La. C.C.P. arts. 2085, 2086. A party to a suit is given an unqualified right to appeal from an adverse final judgment and need not allege and show a direct pecuniary interest in order to be entitled to appeal. A person need not have a judgment directly against him in order to appeal that judgment.
(citations omitted), citing Andrade v. Shiers, 516 So.2d 1192, 1193 (La.App. 2 Cir. 1987). Abboti/Hospira is a party-defendant to the PCF’s cross-claim. It was aggrieved by the judgment to the extent that it was east in judgment for $400.00 on the PCF’s cross-claim. Accordingly, Abbott/Hospira has an unqualified right to appeal from an adverse final judgment. Nevertheless, Abbott/Hospira has not filed any briefs in this appeal. Therefore, we find this assignment of error to be without merit.
I ¡^CONCLUSION
Accordingly, for the reasons stated herein, we reverse and vacate the portion of the November 27, 2012 judgment that awards the PCF $400.00 on its cross-claim against Abbott/Hospira. We affirm the remainder of the trial court’s November 27, 2012 judgment. Each party shall bear their/its own costs for this appeal.

*362
AFFIRMED IN PART; REVERSED AND VACATED IN PART.

. Counsel for Abbott/Hospira was present for only one day of trial, which was the day Richard Breland was called to testify. However, counsel did not sit at counsel’s table, nor did he make an appearance on the record.

. Abbott/Hospira did not file any briefs in the instant appeal. Rather, Abbott/Hospira submitted a letter to this Court's Clerk of Court indicating that because Plaintiffs dismissed their claims against Abbott/Hospira with prejudice, it is present in this appeal in name only.

. La. C.C. art. 2323 provides:
A.In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a non-party, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of La. R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

. La. R.S. 40:1299.44(D)(2)(b)(x)-(xi) were later amended by Acts 2003, No. 882, § 1, but *352 no substantive changes were made at that time.